ACCEPTED
03-14-00733-CR
4011057
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/3/2015 11:53:49 PM
JEFFREY D. KYLE
CLERK

No Oral Argument Requested

No. 03-14-00733-CR
(Should be –CV)

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

2/4/2015 9:56:49 AM

JEFFREY D. KYLE
Clerk

In The
COURT OF APPEALS
THIRD DISTRICT OF TEXAS

**WESLEY PERKINS,**
**Respondent – Appellant,**

**v.**

**STATE OF TEXAS,**
**Plaintiff – Appellee.**

(Brief Due: Extension to Feb. 3, 2015)

On Direct Appeal from the
COUNTY COURT AT LAW NO. 3
OF TRAVIS COUNTY, TEXAS

Trial Cause No. C-1-CR-13-200882
STATE v. PERKINS (should be CV)

**PERKINS'S PRINCIPAL BRIEF**

WES PERKINS
11900 Metric Blvd. Apt. J-179
Austin, TX  78758

## Identity of Parties and Counsel

| **Appellant** | **Appellee** |
|---|---|
| WESLEY EUGENE PERKINS | STATE OF TEXAS |
| 11900 Metric Blvd. Apt. J-179 | By: TRAVIS COUNTY's COUNTY |
| Austin, TX 78758 | ATTORNEY's Office |
| | DAVID ESCAMILLA |
| | P.O. Box 1748 |
| | Austin, TX 78767 |

## Assertion of Rights

PERKINS asserts all his unalienable rights, privileges, and immunities at Natural Law, Common Law, and Maritime Law, and all his commercial rights relevant to "this state."

## Objection to Non-judicial Decision-making

PERKINS objects to and does not consent to any assignment *or* any referral of this case, in any part, to any decision-maker other than a duly elected or properly appointed judicial officer exercising full authority of an appellate court justice and who has an active and current oath of office on file. *Cf. Gonzalez* (**"If the parties consent"**) (construing 28 U.S.C. § 636**(b)**).

## Objection to use of private law

PERKINS objects to the use of unpublished cases. A cite to "WL" or "Lexis" is a reference to materials not publicly accessible. For such references even to begin to be meaningful, a full copy of the opinion for each "WL" or

---

"Lexis" reference must be attached.

## Concerning the Transcripts

A minor matter. The "Master Index" (Vol. 1 of 6) is styled WESLEY PERKINS v. STATE OF TEXAS for the *trial* court case style.  Of course, that should read STATE v. PERKINS, as is found in Vols. 2 to 6 (of 6).

## Record References

R.page for the Clerk's Record; x.Tr.page(lines) for Transcripts, where x may be 1 to 6; x.Supp.Tr.page for Transcripts filed in the interlocutory appeal, where x may be 1 to 3.  All page references are to the *.pdf file* page.

## Transcript Errata

Regarding 4.Tr.11(6), there's a "not" that's missing.  "And I do **[not]** waive service of State's original pleadings."

Regarding 4.Tr.30(13), "bay" is likely originally "way." "Q.  You indicated that Mr. Perkins said over the phone that he was on his **[w]**ay?"

Regarding 4.Tr.66(16), there's a "not" that's missing. 6.Tr.90 (2d line from bottom). (13) "In other words, an operator is the party (14) behind the wheel of a conveyance being used for (15) transportation purposes, whether it has a motor or (16) otherwise.  If you find that Mr. Perkins was **[not]** engaged in (17) any transportation activity, for example, getting paid (18) to take someone or someone's property from one place to (19) another, then you must conclude that he

---

**No Notice.  No commercial nexus.**

was **not** an operator for any purposes in this matter." (emphasis added).

Regarding 4.Tr.105(14), there's a "not" that's missing. (8) Q. Your whole position today was that nobody here (9) has a proper authority to charge you with a criminal (10) offense of driving while license invalid without (11) financial responsibility. Right?

(12) A.    I'm not here to argue with the supreme court of [on?] what transportation is.

(13) Q.    You're [**not?**] here to argue with the supreme court?

(14) A.    I'm here to assert what I found.

---

**No Notice.  No commercial nexus.**

# Table of Contents

PERKINS'S PRINCIPAL BRIEF.................................................................i

Identity of Parties and Counsel ...........................................ii

Assertion of Rights ...............................................................ii

Objection to Non-judicial Decision-making .....................................ii

Objection to use of private law ...........................................ii

Concerning the Transcripts ..................................................iii

Record References..............................................................iii

Transcript Errata...............................................................iii

Index of Authorities...........................................................xii

Statement of the Case..........................................................xvii

   Nature of the Case.........................................................xvii

   Course of Proceedings......................................................xvii

   Trial court disposition ....................................................xx

No Oral Argument Requested.....................................................xx

Issues Presented...............................................................xxi

Statement of Facts ............................................................1

   On the street ............................................................1

   No Subject Matter Jurisdiction and related matters ........................1

     No evidence – Standing.................................................1

     Burden-relieving. .....................................................2

     Nature of claim. ......................................................2

**No Notice.  No commercial nexus.**

Appointment of standby counsel. ...................................................... 2

"Misdemeanor" Transp. Code charges, generally. ........................... 3

No evidence – Capacity. ..................................................................... 3

Appearance Bond. ............................................................................... 4

Bond-jacking and "ultimate issues" as "conditions." ..................... 5

Bond-jacking – No charging instrument; no evidence; no standing. ............ 7

Compelled responsive/defensive pleading. ....................................... 8

No Personal Jurisdiction ...................................................................... 9

Statutory Challenge – Art. 25.04. ...................................................... 9

Burden-relieving. ............................................................................... 10

Panel-related matters ............................................................................ 10

Submission of anything to the advisory panel. .............................. 10

Fair trial – Unfairly biasing the panel. ........................................... 11

Jury instructions. ............................................................................... 11

Trial/Evidence ....................................................................................... 12

STATE's Ex. 1. ................................................................................... 12

The commercial semantics. ............................................................... 13

Void Judgment ....................................................................................... 13

No evidence – conviction. ................................................................. 13

No Notice – what was/is the charge? ............................................... 13

Illegal sentencing – Probation – "ultimate issue." ....................... 15

Developing emergency ......................................................................... 15

_____

Appellant's Principal Brief (PERKINS)                                    vi
**No Notice.  No commercial nexus.**

Summary of the Argument ................................................................. 17

Argument ........................................................................................ 18

    Overview ................................................................................... 18

        LIPSCOMBE erred and/or abused discretion continuously. ...................... 18

        The professional incompetence factor – why pro ses are pro se................. 20

        STATE is begging for vexatious litigant status.......................................... 20

        Pre-trial and perpetually factless judgment on the ultimate issue: "driving."21

        Instead of trying a "transportation" matter, LIPSCOMBE, WASHBOURNE, and CHU unleashed their political attack................................................... 22

        "Civil" from Day One. ................................................................................ 23

        PERKINS's Special Appearance. ................................................................ 23

        Vacate the void "judgment." ...................................................................... 23

    No Subject Matter Jurisdiction and related matters ......................................... 26

        Statutory Challenges – definitions. ............................................................. 26

    Issue 1:  What does "transportation" mean? ..................................................... 26

        "No evidence" standard. .............................................................................. 30

    Issue 2:  What does "vehicle" mean?..................................................................... 31

    Issue 3:  What does "motor vehicle" mean? ........................................................ 32

    Issue 4:  What does "drive" mean?........................................................................ 33

    Issue 5:  What does "operate" mean? .................................................................... 36

    Issue 6:  What does "this state" mean?.................................................................. 37

---

**No Notice.  No commercial nexus.**

No evidence – Standing................................................................................ 38

Issue 7:   Did STATE ever prove standing, i.e., "transportation?".................. 38

Burden-relieving. ....................................................................................... 39

Issue 8:   Did LIPSCOMBE relieve STATE of its evidentiary burden?.......... 39

Use of irrebuttable presumptions violates Due Process. ............................ 40

Nature of claim. ......................................................................................... 41

Issue 9:   Did STATE ever have a "criminal" case? ...................................... 41

Appointment of standby counsel. ............................................................... 42

Issue 10:   May standby counsel be appointed for this "civil" matter?............ 42

Statutory Challenge – Transp. Code charges, generally.............................. 45

Issue 11:   May STATE ever charge *any* alleged Transp. Code violation as a
              misdemeanor? ........................................................................... 45

What is the proper offense level? ............................................................... 45

What is the proper charging instrument? .................................................... 48

No waiver of Indictment.............................................................................. 48

No evidence – Capacity............................................................................... 48

Issue 12:   Did STATE ever prove PERKINS liable in the capacity charged? 48

---

**No Notice.  No commercial nexus.**

Appearance Bond. ........................................................................ 49

Issue 13: Did LIPSCOMBE actually add conditions to PERKINS's
Appearance Bond? ...................................................... 49

Issue 14: Did LIPSCOMBE err (or abuse discretion) by adding *any*
conditions to PERKINS's Appearance Bond? ............... 51

Issue 15: Did LIPSCOMBE err (or abuse discretion) by adding "ultimate
issue" conditions to PERKINS's Appearance Bond? .................... 51


No evidence – Bond-jacking. ..................................................... 53

Issue 16: Did LIPSCOMBE err (or abuse discretion) by compelling
PERKINS to post more Bond? ....................................... 53


Compelled responsive/defensive pleading. ................................ 53

Issue 17: Did LIPSCOMBE err (or abuse discretion) by entering a responsive
plea of *any* nature for PERKINS? ................................ 53


Statutory Challenge – Art. 25.04. ............................................. 55

Issue 18: Does Art. 25.04 facially violate Due Process? ............... 55

Art. 25.04. ............................................................... 55


Burden-relieving. ...................................................................... 57

Issue 19: Did LIPSCOMBE relieve STATE of its procedural burden? ......... 57


Panel-related matters .................................................................. 58

Issue 20: Did LIPSCOMBE err (or abuse discretion) by sending the matter to
the panel at all? ........................................................ 58

---

Fair trial – Unfairly biasing the panel. ....................................................... 62

Issue 21:  Did LIPSCOMBE unfairly bias the panel with his errant legal argument about what "transportation" means?.............................. 62

Issue 22:  Did LIPSCOMBE unfairly bias the jury with this opening remarks about transportation licensure mixed with insurance?................... 64

Issue 23:  Did LIPSCOMBE unfairly bias the panel with his errant legal argument during PERKINS's case-in-chief?................................. 65


Jury instructions. ....................................................................................... 66

Issue 24:  Did LIPSCOMBE err (or abuse discretion) by failing to define "transportation" for the panel?....................................................... 66

Issue 25:  Did LIPSCOMBE err (or abuse discretion) by failing to define "drive," "operate," and "vehicle" for the panel? ........................... 67

Issue 26:  Did LIPSCOMBE err (or abuse discretion) by failing to explain the algebraic connection between "transportation" and the key commercial, semantic terms of legal conclusion? ......................... 68

Issue 27:  Did LIPSCOMBE err (or abuse discretion) by failing to include any of PERKINS's proposed Instructions?.......................................... 70


Trial/Evidence .......................................................................................... 71

Issue 28:  Did LIPSCOMBE err (or abuse discretion) by admitting STATE's Ex. 1? ................................................................................ 71

Issue 29:  Did LIPSCOMBE err (or abuse discretion) by overruling PERKINS's objections to the commercial semantics? .................. 72

No evidence – conviction. ............................................................................. 73

Issue 30:   Did LIPSCOMBE err (or abuse discretion) by accepting the advisory panel's recommendation on guilt?.................................. 73

Illegal sentencing – Probation – "ultimate issue.".......................................... 74

Issue 31:   Did LIPSCOMBE err (or abuse discretion) by adding "ultimate issue" conditions on probation? ...................................... 74

Request for Relief................................................................................................ 75

Certificate of Service ......................................................................................... 76

Certificate of Compliance .................................................................................. 76

Appendix Contents ............................................................................................. 77

Mandatory ...................................................................................................... 77

Optional    ....................................................................................................... 77

# Index of Authorities

**Cases**

*Aguilar v. State*, 846 S.W.2d 313 (Tex. Crim. App. 1993). ................................. 55

*Alalunga Sport Fishers, Inc. v. County of San Diego*, 247 Cal. App. 2d 663 (Cal. App. 4th Dist. 1967). ........................................................................ 29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ......................................... 39

*Armstrong v. Manzo*, 380 U.S. 545 (1965). ........................................................ 56

*Arnold v. United States*, 544 U.S. 1058 (May 31, 2005). ...................................... 54

*Austin v. New Hampshire*, 420 U.S. 656, 668 (1975) (Blackmun, J., dissent). ....... 41

*Ballard v. Comm'r*, 544 U.S. 40 (2005). ............................................................. 53

*Bates v. State Bar of Arizona*, 433 U.S. 350 (1977). ............................................ 54

*Bearden v. United States*, 320 F.2d 99 (5th Cir. 1963). ....................................... 28

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000). ............................... 73

*Brown v. State*, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003). ............................ 40

*Burger King Corp. v. **Rudzewicz***, 471 U.S. 462 (1985). .............................. 53, 72

*Burns v. United States*, 501 U.S. 129 (1991). ...................................................... 56

*Casias v. State*, 503 S.W.2d 262 (Tex. Crim. App. 1973). .................................... 45

*Chicago, R. I. & G. Ry. Co. v. **Cosio***, 182 S.W. 83 (Tex. Civ. App. – Amarillo 1916, no writ). ............................................................................... 27

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). .................................. 30, 61

*Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974). .................................... 40

*Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851 (Tex. 2009). ........................................................................................................ 62, 63

*Connecticut v. **Johnson***, 460 U.S. 73 (1983). ................................................ 40

*Cornell Steamboat Co. v. United States*, 321 U.S. 634, 641 (1944) (Frankfurter, J., dissent). .............................................................................. 27

*County Court of Ulster County v. Allen*, 442 U.S. 140 (1979). ............................. 40

*Cuellar v. United States*, 553 U.S. 550 (2008). ................................................... 29

*Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 344 (1980) (Powell, J., and Stewart, J., dissent). ........................................................................ 41

*Dragich v. County of Los Angeles*, 30 Cal.App.2d 397, 86 P.2d 669 (Cal. App. 1939). ..................................................................................................... 29

---

**No Notice. No commercial nexus.**

*Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000). .................................... 45

*Elkins v. Moreno*, 435 U.S. 647 (1978). ............................................................ 40

*Escobedo v. Illinois*, 378 U.S. 478 (1964). ........................................................ 54

*Ex parte Anderer*, 61 S.W.3d 398 (Tex. Crim. App. 2001). ............................ 51, 52

*Ex parte Padron*, 565 S.W.2d 921 (Tex. 1978). ................................................ 50

*Fed. Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598 (1943). .......... 45

*Garcia v. Dial*, 596 S.W.2d 524 (Tex. Crim. App. 1980). ................................. 45

*Gideon v. Wainright*, 372 U.S. 335 (1963). ....................................................... 43

*Gonzalez v. United States*, 553 U.S. 242 (May 12, 2008). ........................... ii, 54

*Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678 (1965). ........................ 75

*Hall v. State*, 661 S.W.3d 101 (Tex. Crim. App. 1983). .................................. 40

*Hammell v. State*, 198 Ind. 45 (Ind. 1926). ...................................................... 29

*Heiner v. Donnan*, 285 U.S. 312 (1932). .......................................................... 40

*Hicks v. Pilgrim Poultry, G.P.*, 299 S.W.3d 249 (Tex. App.—Texarkana 2009, no writ). ............................................................................................................... 61

*Ieppert v. State*, 908 S.W.2d 217 (Tex. Crim. App. 1995). ............................... 45

*In re Fountain*, 433 S.W.3d 1, 10, (Tex. App. – Houston [1st Dist.] 2012, no writ) (dissent KEYES, J.). .......................................................................................... 50

*In re Winship*, 397 U.S. 358 (1970). ................................................................. 40

*La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674 (Tex. 1998). ............................... 62

*Leary v. United States*, 395 U.S. 6 (1969). ....................................................... 40

*Lloyd v. Alexander*, 5 U.S. (1 Cranch) 365 (1803). .......................................... 56

*Lozman v. City of Riviera Beach*, 133 S. Ct. 735 (2013). ..................................
............................................................... 11, 16, 27, 29, 31, 39, 53, 67, 74

*Mapco, Inc. v. Forrest*, 795 S.W.2d 700 (Tex. 1990) (orig. proc.). ................... 73

*Marshall v. Buntings' Nurseries, Inc.*, 459 F. Supp. 92 (D. Md. 1978). ............. 29

*Maynard v. Texas*, 249 S.W. 473 (Tex. Crim. App. 1923). ............................... 27

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). ..... 59

*Michigan v. United States Army Corps of Eng'rs*, 911 F. Supp. 2d 739 (N.D. Ill. 2012). ................................................................................................................ 29

*Miller v. Woods*, 872 S.W.2d 343 (Tex. App. – Beaumont 1994, orig. proc.). ..... 73

*Miranda v. Arizona*, 384 U.S. 436 (1966). ....................................................... 54

**No Notice.  No commercial nexus.**

*Mullaney v. Wilbur*, 421 U.S. 684 (1975). ..........................................................40

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)............56

*Murray v. State*, 302 S.W.3d 874 (Tex. Crim. App. 2009). ...................................45

*National Federation of Independent Businesses v. Sebelius*, 132 S. Ct. 2556 (2012) (***NFIB***). ........................................................................................................74

*Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978)..........................................54

*Pennock v. State*, 725 S.W.2d 414 (Tex. App. – Houston [1st Dist.] 1987, no pet). ....................................................................................................................40

*People v. **Lacross***, 91 Cal. App. 4th 182 (Cal. App. 3d Dist. 2001)......................29

*Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429 (1895) (***Pollock I***)...............54

*Prairie View A&M Univ. v. Brooks*, 180 S.W.3d 694 (Tex. App.—Houston [14th Dist.] 2005, no writ). ..........................................................................................61

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007)..................................41

*Rothgery v. Gillespie County, Texas*, 554 U.S. 191 (2008). .................................42

*Sacramento Navigation Co. v. **Salz***, 273 U.S. 326 (1927). ..................................28

*Sandstrom v. Montana*, 442 U.S. 510 (1979)................................................. 39, 40

*Scott v. Harris*, 550 U.S. 372 (2007). ...................................................................39

*Smith v. **O'Grady***, 312 U.S. 329 (1941).............................................................56

*St. Clair Cnty v. Interstate Sand & Car Transfer Co.*, 192 U.S. 454 (1904). ........27

*Stanley v. Illinois,* 405 U.S. 645 (1972). ..............................................................40

*State v. **Chacon***, 273 S.W.3d 375 (Tex. App. – San Antonio 2008, no pet.)... 46, 47

*State v. **Dunbar***, 297 S.W.3d 777 (Tex. Crim. App. 2009)...................................45

*State v. Heilman*, 413 S.W.3d 503 (Tex. App. – Beaumont 2013, pet. granted)....45

*Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)................. ..........................................................................................................39, 45, 59, 60

*Tot v. United States*, 319 U.S. 463 (1942). ...........................................................40

*United States v. **Booker***, 543 U.S. 220 (2005). ..................................................54

*United States v. **Diebold***, 369 U.S. 654 (1962). .................................................39

*United States v. **Hinton***, 222 F.3d 664 (9th Cir. 2000). ......................................28

*Vlandis v. Kline*, 412 U.S. 441 (1973). .................................................................40

*Weinberger v. **Salfi***, 422 U.S. 749 (1975)...........................................................40

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000)...................................61

*Williams v. Vermont*, 472 U.S. 14, 28 (1985) (dissent). ......................................... 41

**Statutes**

28 U.S.C. § 636(a), (c). ............................................................... 54
28 U.S.C. § 636(b). ..................................................................... 54
49 U.S.C. § 902(i)(1). .................................................................. 27
TEX. PENAL CODE § 32.43. ......................................................... 3, 46
TEX. PENAL CODE ANN. § 46.15(b)(3). ........................................ 29
TEX. TRANSP. CODE ANN. § 24.013(f)(2) (Thomson/West 2011). ........ 36
TEX. TRANSP. CODE ANN. § 501.002(14). ..................................... 32
TEX. TRANSP. CODE ANN. § 502.001(13). ..................................... 32
TEX. TRANSP. CODE ANN. § 502.001(24). ..................................... 31
TEX. TRANSP. CODE ANN. § 522.003(11). ..................................... 33
TEX. TRANSP. CODE ANN. § 522.003(21). ..................................... 32
TEX. TRANSP. CODE ANN. § 541.001(1). ....................................... 36
TEX. TRANSP. CODE ANN. § 541.201(11). ..................................... 32
TEX. TRANSP. CODE ANN. § 541.201(23). ..................................... 31
TEX. TRANSP. CODE ANN. § 601.002(5). ....................................... 32
TEX. TRANSP. CODE ANN. § 601.002(8). ....................................... 36
TEX. TRANSP. CODE ANN. § 621.001(9). ....................................... 31
TEX. TRANSP. CODE ANN. § 642.001(1). ....................................... 32
TEX. TRANSP. CODE ANN. § 642.001(2). ....................................... 36
TEX. TRANSP. CODE ANN. § 647.001(4). ....................................... 32
TEX. TRANSP. CODE ANN. § 647.001(5). ....................................... 36
TEX. TRANSP. CODE ANN. § 683.001(4). ....................................... 32
TEX. TRANSP. CODE ANN. § 724.001(11). ..................................... 36
TEX. TRANSP. CODE ANN. § 728.001(2). ....................................... 32
TEX. TRANSP. CODE ANN. § 750.003(a). ....................................... 31

**No Notice.  No commercial nexus.**

**Rules of Criminal Procedure**

TEX. CODE CRIM. PROC. ANN. art. 1.05. ("Art. ___"). ........................................... 42

Art. 1.051. ...................................................................................................... 43

Art. 1.14. ........................................................................................................ 43

Art. 12.02. ...................................................................................................... 45

Art. 15.17. ...................................................................................................... 43

Art. 24.01(b)(2). .............................................................................................. 57

Art. 24.01(c). ................................................................................................... 57

Art. 25.04. ...................................................... 9, 10, 17, 23, 25, 55, 75

Art. 42.15. ....................................................................................................... 42

**Rules of Civil Procedure**

FED. R. CIV. P. 8(c). ....................................................................................... 53

TEX. R. CIV. P. 15. ......................................................................................... 58

TEX. R. CIV. P. 16. ......................................................................................... 58

TEX. R. CIV. P. 17. ......................................................................................... 58

TEX. R. CIV. P. 21a. ....................................................................................... 58

TEX. R. CIV. P. 21b. ....................................................................................... 58

TEX. R. CIV. P. 94. ......................................................................................... 53

TEX. R. CIV. P. 103. .................................................................................. 57, 58

TEX. RS. CIV. P. 99-107. ............................................................................ 48, 58

**Treatises**

1 PAGE, THE LAW OF WILLS, §§ 5.7, 15.11 (rev. 2003). ..................................... 54

AMY MORRIS HESS, GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE
LAW OF TRUSTS AND TRUSTEES § ___ (Supp. 2011) ("BOGERT § ___")
BOGERT § 42 (rev. 2d ed. 1984 & Supp. 2011). ............................................ 49, 54

BOGERT § 44 (rev. 2d ed. 1984 & Supp. 2011). ............................................ 49, 54

## Statement of the Case

### Nature of the Case

"Civil" non-case arising from "transportation" code enforcement.

### Course of Proceedings

Arrest.

STATE. Information, R.13, and Complaint, R.14, filed but never Served.

PERKINS. Special Appearance and Plea to the Jurisdiction. R.19-68.

PERKINS. Discovery. R.15-18. [1]

PERKINS. Continuance request from June 5 setting. R.72-75; R.77-80 (redo for the date issue on first notarization); R.81 (reset for Aug. 28).

PERKINS. Request for TBC. R.82-85. (Effectively denied).

PERKINS. Motion in Limine. R.86-107 (Jun. 28).

Case reset from Aug. 28 to Dec. 4, 2013.

STATE. Bond-jacking episode. On date of trial, and instead of trial, STATE sandbagged, blindsided PERKINS on Bond issue for an alleged act of "driving" during pendency of this first matter. ***Enforcement*** of "ultimate issue" [2] (What is "driving?") ***without and prior to resolution*** of that ultimate issue. All presumptions, e.g., jurisdiction, standing, evidence, went *against* PERKINS.

---

[1] Clerical sequencing gets "convenient" in a couple of places.
[2] *See* p.5. *See also* n.7.

---

**No Notice.  No commercial nexus.**

PERKINS jailed, again. Bond jacked from $2,000 to $9,500. E.g., R.146-47. No

Notice. No meaningful opportunity to respond.

STATE's Motion to Revoke is filestamped Dec. 9. R.116-17. The court's

order date is Dec. 4. R.118. [3]

PERKINS. Interlocutory appeal of effective denial of Special Appearance

via Bond-jacking. R.119-37. Motion for Stay. R.141-44.

Appellate court. No relief (offered/extended to the trial court), and that via

unrecognizable/unenforceable "order." R.162-67.

Trial reset to May, 2014.

Trial reset to Aug., 2014. *See also* 2.Tr, generally.

STATE's Supreme Court. No. 14-0366. "No jurisdiction." [4] R.176-79 (post

cards don't include the ruling).

PERKINS. Trial Brief in wake of "No jurisdiction" ruling in No. 14-0366.

Trial.

Regarding any "plea," PERKINS never entered one. 4.Tr.11(1-16). He never

had Notice of any pleading by STATE so as to respond in kind.  Thus, R.184 is

just plain wrong where it "recites" that "Defendant had pleaded not guilty."

---

[3] "Convenient" clerical sequencing. R.116-18.

[4] Further study confirmed that this had *nothing* to do with the "civil v. criminal"
character issue but rather solely with the statutory limit on the Court regarding
interlocutory appeals. Mandamus exists to protect appellate jurisdiction. So, where
there's no appellate jurisdiction, it follows there won't be any mandamus, either.

**No Notice.  No commercial nexus.**

PERKINS never did any such thing. R.195 is also just plain wrong where it "recites" that PERKINS pled "not Guilty." *LIPSCOMBE* pled not guilty, not PERKINS. 4.Tr.11(1-16). R.240 is also just plain wrong where the "NC" box is checked as a "plea." PERKINS never pled, much less "No Contest."

PERKINS. Motion in Limine – Denied. 3.Tr.13(19-20).

STATE proved up nothing about "transportation." PERKINS affirmatively negated "transportation" in all respects. All of PERKINS's trial-time motions were denied.

Case without evidence submitted to advisory panel, anyway.

The "charge," which was never Served on PERKINS, morphed from "driving while license suspended," R.13, 14, 195, 4.Tr.10 (the language of the **Information**), to "driving while license invalid," R.1, 5, 6, 7, 116, 146, 201, 238, 2.Tr.4, 3.Tr.4(1-3), 3.Tr.16(13-14), 3.Tr.20 (CHU says that "suspended" and "invalid" are the same thing), 5.Tr.5(23-24), to "DWL INV W/PRV CAN/SUP/WO FN RE," whatever that is, R.108-11, R.112-15, R.168-71, R.172-75, 198 (some translation assistance is found here: "DRIVING W/LIC INV W/PREV CONV/SUSP/W/O FIN RES" is very likely to mean "driving while license invalid with previous conviction/suspension without financial responsibility"), 4.Tr.111(11-13), to "Driving While License Invalid without Financial Responsibility," R.184, 189, 4.Tr.88(5-10), 4.Tr.105(8-11), 4.Tr.110(7-

**No Notice.  No commercial nexus.**

11, 14-15), 4.Tr.114(14) to .115(10), .116(13-15), 4.Tr.132(6-12) (the language of the **trial**). [5]

Note: Trial date: Aug. 22, 2014. Sentencing date: Aug. 26, 2014.

PERKINS. Motion for New Trial. Sep. 24, 2014. R.202-33.

No ruling as of Nov. 10.

PERKINS. Notice of Appeal. Nov. 17, 2014. R.234-37.

## Trial court disposition

Convicted of some morphed hodgepodge having to do with "transportation," "licensing," and "insurance." Sentenced to probation, which conditions compel getting a "license" and purchasing "insurance," the violation of which activates the panel's recommendation of 45 days jail and a $2,000 fine.

## No Oral Argument Requested

Oral argument is not expected to aid in the resolution of these issues.

---

[5] 3.Tr.6(6-8) – "THE COURT [regarding PERKINS's objection to appointment of standby counsel]: And they're [STATE is] charging under statute that has been passed by the legislature and found valid by the courts."
That and a couple of bucks (or so) buys coffee at popular coffee houses. The Transp. Code nowhere applies just because it exists. If the Transp. Code applies, at all, it's by *commercial* consent of the party targeted. That's **not** "sovereignty." "Sovereignty" asserts *political* non-consent, a greatly mis-/un-informed position. Without *commercial* consent, the Transp. Code is 100% irrelevant to everything.

**No Notice.  No commercial nexus.**

## Issues Presented

**No Subject Matter Jurisdiction and related matters**

<u>Statutory Challenges – definitions</u>

Issue 1:      What does "transportation" mean?

Issue 2:      What does "vehicle" mean?

Issue 3:      What does "motor vehicle" mean?

Issue 4:      What does "drive" mean?

Issue 5:      What does "operate" mean?

Issue 6:      What does "this state" mean?

<u>No evidence – Standing</u>

Issue 7:      Did STATE ever prove standing, i.e., "transportation?"

<u>Burden-relieving</u>

Issue 8:      Did LIPSCOMBE relieve STATE of its evidentiary burden?

<u>Nature of claim</u>

Issue 9:      Did STATE ever have a "criminal" case?

<u>Appointment of standby counsel</u>

Issue 10:     May standby counsel be appointed for this "civil" matter?

_____

**No Notice.  No commercial nexus.**

Statutory Challenge – Transp. Code charges, generally

Issue 11:    May STATE ever charge *any* alleged Transp. Code violation as a misdemeanor?


No evidence – Capacity

Issue 12:    Did STATE ever prove PERKINS liable in the capacity charged?


Appearance Bond

Issue 13:    Did LIPSCOMBE actually add conditions to PERKINS's Appearance Bond?


Issue 14:    Did LIPSCOMBE err (or abuse discretion) by adding *any* conditions to PERKINS's Appearance Bond?


Issue 15:    Did LIPSCOMBE err (or abuse discretion) by adding "ultimate issue" conditions to PERKINS's Appearance Bond?


No evidence – Bond-jacking

Issue 16:    Did LIPSCOMBE err (or abuse discretion) by compelling PERKINS to post more Bond?

             (Even if any conditions on Bond *were* lawfully added, did PERKINS *ever* breach them?)


Compelled responsive/defensive pleading

Issue 17:    Did LIPSCOMBE err (or abuse discretion) by entering a responsive plea of *any* nature for PERKINS?

---

**No Notice.  No commercial nexus.**

**No Personal Jurisdiction**

      Statutory Challenge – Art. 25.04

Issue 18:    Does Art. 25.04 facially violate Due Process?

      Burden-relieving

Issue 19:    Did LIPSCOMBE relieve STATE of its procedural burden?

**Panel-related matters**

Issue 20:    Did LIPSCOMBE err (or abuse discretion) by sending the matter to the panel at all?

      Fair trial – Unfairly biasing the panel

Issue 21:    Did LIPSCOMBE unfairly bias the panel with his errant legal argument about what "transportation" means?

Issue 22:    Did LIPSCOMBE unfairly bias the jury with this opening remarks about transportation licensure mixed with insurance?

Issue 23:    Did LIPSCOMBE unfairly bias the panel with his errant legal argument during PERKINS's case-in-chief?

      Jury instructions

Issue 24:    Did LIPSCOMBE err (or abuse discretion) by failing to define "transportation" for the panel?

_____

**No Notice.  No commercial nexus.**

Issue 25:    Did LIPSCOMBE err (or abuse discretion) by failing to define "drive," "operate," and "vehicle" for the panel?

Issue 26:    Did LIPSCOMBE err (or abuse discretion) by failing to explain the algebraic connection between "transportation" and the key commercial, semantic terms of legal conclusion?

Issue 27:    Did LIPSCOMBE err (or abuse discretion) by failing to include any of PERKINS's proposed Instructions?

**Trial/Evidence**

Issue 28:    Did LIPSCOMBE err (or abuse discretion) by admitting STATE's Ex. 1?

Issue 29:    Did LIPSCOMBE err (or abuse discretion) by overruling PERKINS's objections to the commercial semantics?

**Void Judgment**

No evidence – conviction

Issue 30:    Did LIPSCOMBE err (or abuse discretion) by accepting the advisory panel's recommendation on guilt?

Illegal sentencing – Probation – "ultimate issue"

Issue 31:    Did LIPSCOMBE err (or abuse discretion) by adding "ultimate issue" conditions on probation?

_____

**No Notice.  No commercial nexus.**

## Statement of Facts

### On the street

Austin PD stopped PERKINS's wife for speeding. 4.Tr.22(10) to .23(5). That led to the phone call to PERKINS, 4.Tr.27(2) to .28(2), who showed up at the scene. 4.Tr.30(15-16).

Austin PD arrested PERKINS on outstanding warrants arising from prior "transportation" matters. 4.Tr.34(6-18), .35(6) to .38(20). They also arrested him for the matter at bar. 4.Tr.38(21) to .39(12).

At no time did any officer even make inquiry into any passenger manifest, bill of lading, or hire. 4.Tr.39(20) to .41(7).

### No Subject Matter Jurisdiction and related matters

No evidence – Standing.

At no time was PERKINS (1) removing anyone or anything (2) from one place to another (3) for hire (4) in "this state." Whole Record; R.66-67; R.134-35; 4.Tr.49(7) to .51(4). At no time has PERKINS consented to being in "transportation." 2.Supp.Tr.11(8) to .13(1); 4.Tr.30(18) to .31(4); .31(8-21); .32(10-17); .45(25) to .46(10); .84(18) to .85(14); .103(14-18); .105(22-25); R.19 (Spec. Appear.); Record on appeal for interlocutory appeal; R.86 (Mot. in Limine); R.180 (Trial Brief after interlocutory appeal); R.202 (Mot. for New Tr.); 6.Tr.27 to

---

**No Notice.  No commercial nexus.**

.76. *See also* 6.Tr.77 to .115.

STATE boldly marched through the entire trial process without *any* evidence of "transportation:" no passenger manifest, bill of lading, *or* hire. Whole Record; 4.Tr.39(20) to .41(7), .49(7) to .51(4).

Burden-relieving.

Strangely, but clearly, STATE didn't think it *necessary* to prove "transportation" for a **Transp.-Code**-based matter.  Even more clearly, LIPSCOMBE didn't, either.  *See, e.g.*, **3.Tr**.7(11) to .8(20); **4.Tr**.139(7-14).

Nature of claim.

STATE never *intended* to prove standing, and STATE *succeeded* by completely failing to prove standing. Whole Record; 4.Tr.39(20) to .41(7); .49(7) to .51(4).  STATE tendered no evidence of any commercial nexus, thus of any breach, i.e., of any "actual grievance" or "injury in fact." *Id*.

Procedurally, one consequence is the resulting nature of STATE's claim. Where STATE has no standing for a "criminal" matter, *cf., e.g.,* 2.Tr.4(19-22), 3.Tr.10(13) to .11(20), it's a non-case, which matters are "***civil***" in nature.

Appointment of standby counsel.

In this "civil" matter, LIPSCOMBE appointed standby counsel over

PERKINS's objection. R.6, 12, 200; 3.Tr.4(9) to .6(25); .11(21) to .12(18).

Moreover, PERKINS is not indigent. R.6, 9, 10, 116-18, 146, 147, 199, 3.Tr.4(9-16), 12(3-10). *But see* R.200.

<u>"Misdemeanor" Transp. Code charges, generally.</u>

The legal mechanism undergirding the Transp. Code is that of alleged breach of fiduciary duty. That's the only type of commercial breach for which "criminal" enforcement is even possible. *Cf.* TEX. PENAL CODE § 32.43 *with* STATE's and the national Debt Collection Practices Acts.

STATE's legislature has established that "criminal" breach of fiduciary duty is a state jail felony. TEX. PENAL CODE § 32.43. That raises the *very* fundamental question as to *misdemeanor* charges and county court jurisdiction, generally. Even if such "agreement between the parties," say, via a Transp. Code provision, *existed*, and it doesn't exist here, but if it did, could such "agreement" ***alter*** the established punishment level?

<u>No evidence – Capacity.</u>

By STATE's very same complete and intentional failure even to *try* to prove "transportation," i.e., standing, Whole Record, 4.Tr.39(20) to .41(7), .49(7) to .51(4), STATE also tendered no evidence that PERKINS was ever acting in any relevant fiduciary capacity at any time relevant to this matter.

---

**No Notice.  No commercial nexus.**

<u>Appearance Bond.</u>

This list intends to be exhaustive regarding Appearance Bond. R.6, [6] 9, 10, 116-18, 119-37, 138-40, 141-44, 145, 146, 147, 148-61, 162-63, 164, 165, 166-67, 176-79, 180-83, 199, 200, 234-37 (236), 238 (no (additional) appeal Bond required), 240; 4.Tr.103(22) to .104(8); 4.Tr.107(10-17); 4.Tr.113(19) to .114(8); 4.Tr.133(25) to .134(15); 1.Supp.Tr (all); 2.Supp.Tr (all); 3.Supp.Tr (all).

LIPSCOMBE and STATE (WASHBOURNE) Bond-jacked PERKINS, 1.Supp.Tr (all), 2.Supp.Tr (all), 2.Supp.Tr.14(17) to .15, 3.Supp.Tr (all), in part based on the notion that LIPSCOMBE had somewhere added "no driving" as a condition to PERKINS's appearance Bond. 2.Supp.Tr.13(11-17) (context continues to .14(17)). To review that exhaustive list is to see that there's not one word in *any* order prior to Bond-jacking about *any* such provision. If "driving" includes "travel," it's extremely material that there's no evidence of any Notice to PERKINS about any such added condition on *any* Appearance Bond. STATE's motion mentions nothing about any such Bond condition. R.116-17.

Going the other way, material is the absence of an affirmative assertion of something like, "I've never heard that before." So, even if we presume something was mentioned, there's still no written, signed, and filed, or otherwise documented,

---

[6] R.7-8 wasn't offered or subjected to cross-examination. Reference to any of it here isn't with any intent to bring it in now. It isn't consented to. For academic completeness only, R.8 mentions Bond.

**No Notice.  No commercial nexus.**

order adding any such condition to any version or form of Appearance Bond.

In the Bond-jacking episode, R.116-18, 1.Supp.Tr., 2.Supp.Tr., and 3.Supp.Tr (all), STATE tried PERKINS for a "criminal" offense (A) without even *filing*, much less serving, a competent charging Instrument, (B) without Notice, (C) without an advisory panel, and (D) without producing a "final order" subject to immediate appellate review.

<u>Bond-jacking and "ultimate issues" as "conditions."</u>

Looking at the whole of the Bond-jacking episode, 1.Supp.Tr, 2.Supp.Tr, 3.Supp.Tr, R.118, R.116-17, it documents the epitome of what happens when "ultimate issues" are made "conditions" processed in contexts completely stripped off all remote association with Due Process. Getting to the core, even if LIPSCOMBE *could* and *did* add conditions to PERKINS's Appearance Bond, there's still the question of whether pre-trial or post-conviction Bond conditions may include "ultimate issue" matters. Here's the problem, which shows up *again* in the Probation conditions, where an "ultimate issue" is a condition of Bond, Probation, etc. For this Bond-jacking episode, STATE alleged a ***criminal offense*** of "driving" without a "license." 2.Supp.Tr.6(22-25); R.116-17.

Bond condition *or* independently from Bond, **where that intends to be a "criminal" charge**, 2.Supp.Tr.7(22-25), we have this. There was no charging

**No Notice.  No commercial nexus.**

instrument even *filed,* which, as raised, *supra,* would have to be a Grand Jury Indictment, much less *served.* There was no Notice of any type. STATE ***and*** LIPSCOMBE, clearly already pursing their political vendetta against "sovereignty" using PERKINS as a whipping boy, blind-sided and sand-bagged PERKINS. 2.Supp.Tr (all). There was, then, no time to prepare a defense. There was no advisory panel. *Id*. There was no meaningful access to direct, immediate appellate review. *See* Interlocutory Appeal. Yet, STATE "charged" PERKINS "criminally;" LIPSCOMBE "tried" PERKINS, under a *presumption* of **"guilt;"** LIPSCOMBE "found" PERKINS "guilty;" LIPSCOMBE "punished" PERKINS, including allowing another arrest; and PERKINS has no direct access to an appellate court to review that "conviction." All of that under the cloak, of course, of a matter over which LIPSCOMBE never had subject matter jurisdiction in the first place.

**Where that intends to be a "civil" breach claim**, we have this. There was no motion/petition *filed*, much less *served*. There's no Notice of any type. STATE and LIPSCOMBE blind-sided and sand-bagged PERKINS. There was, then, no time to prepare a response. There was no option for civil advisory panel participation. There was no meaningful access to direct, immediate appellate review. Yet, STATE alleged breach; LIPSCOMBE "heard" the claim; LIPSCOMBE "found" PERKINS "liable," including use of irrebuttable presumptions; LIPSCOMBE "judged" PERKINS, including allowing another

**No Notice.  No commercial nexus.**

arrest (over a civil breach issue); and PERKINS had no "final judgment" for appellate review. All that occurred in the context of a matter for which LIPSCOMBE never had jurisdiction to begin with.

Consistent with the present "thinking" about how to handle alleged "breach of condition" claims, the Bond-jacking proceeding was completely stripped any and all notions of Due Process. Why is PERKINS under Bond, at all, in the first place? Because STATE charged him **"criminally"** for that very same concept. Then, under a Bond-condition pretext, STATE pursued that exact same claim, *that exact … same … claim …*, but to a "preponderance" standard, not a "reasonable doubt" standard, i.e., **"civilly,"** **pre-trial**, under procedural conditions presently "approved" for a *post*-conviction setting, but which are in no way valid in the pre-trial stage, where *all* the presumptions still *favor* the defense.

<u>Bond-jacking – No charging instrument; no evidence; no standing.</u>

1., 2., and 3.Supp.Tr. (all). Even *if* **any** conditions on Bond *were* lawfully added **and** Notice to PERKINS supplied (or waived via no clear objection of Record),[7] did PERKINS *ever* breach that condition? Regarding the sandbagging

---

[7] No waiver works against PERKINS, here. Where STATE intends to prove violation of Bond via some ***"criminal" offense*** or other, LET STATE TRY TO PROVE UP THAT ALLEGED CRIME IN THE NORMAL COURSE. That means STATE need(s)(ed) **a charging instrument** (and standing, etc.) to establish any remote semblance of jurisdiction, and there isn't one.

**No Notice.  No commercial nexus.**

"trial" of the "claim within the claim," STATE never even filed a competent charging instrument, much less served one. More over, as usual, STATE never even intended to prove "transportation," at which failure STATE succeeded masterfully. **One more time**, PERKINS at no time relevant to this entire matter, including this particular Bond-jacking episode, removed anyone or anything from one place to another for hire in "this state." *Id*. (no evidence).

Compelled responsive/defensive pleading.

PERKINS is, of course, fully aware of procedural concepts that purport to impose on a trial court a *duty* to enter a responsive plea where the defendant declines/refuses to do so.

However, there are conditions precedent to the exercise of jurisdiction for that phase of what intends to be a "criminal" proceeding. Key conditions precedent

---

Commentary. Such "Bond-violation or -adjustment due to criminal activity" claim **must** compel STATE **to charge and sue out the alleged crime**. This notion of, "We think there's a crime here, so let's set up an instant trial and violate every remote concept of Due Process (for which hundreds of thousands of Americans have given their lives in order to preserve), and then deprive the target of both liberty **and** property in the face of "no evidence," is, in and of itself, a whole series of **criminal offenses**, *see* 18 U.S.C. §§ 241, 242 (blatant violation of all kinds of very long-established, Due-Process-related rights). And, that's the up side; that's even if STATE *had* a claim, **which they didn't, here**. "Immunity?" For a "civil" matter?? Doesn't exist. They're just so cock and bull sure that they understand the law that they've **defied** it, even **criminally** violated it. They may still wonder why "Alice in Wonderland" was written. By their habitual, lawless tyranny, they pour train-car loads of fuel on the "sovereignty" movement's fire, as well as compel more prudent study, such as what PERKINS has engaged.

---

**No Notice.  No commercial nexus.**

are both subject matter jurisdiction *and* personal jurisdiction.

Here, PERKINS very plainly raised challenges to *all* jurisdiction per his Special Appearance and Plea to the Jurisdiction, and his interlocutory appeal in support of those challenges. R.19-68, 69-71, 86-107; R.116-18, 2.Supp.Tr (all); R.119-37, 138-44, 148-61 (orig. in appellate Record), 176-79, 180-83. LIPSCOMBE never heard evidence on the jurisdictional facts. Moreover, LIPSCOMBE confirmed that he was fully aware that STATE had never *served* PERKINS with *any* original pleading. *See, e.g.*, **3.Tr**.10(13) to .11(20); **4.Tr**.72(17-20). Despite knowing, and later taking Judicial Notice of, what STATE had *filed*, 4.Tr.72(17-20), and *not served*, LIPSCOMBE proceeded to enter a responsive plea "for" PERKINS. 4.Tr.11(14-15).

PERKINS didn't plea; he had no intention of waiving Notice. *E.g.*, 4.Tr.11(1-16).

Having no personal jurisdiction, LIPSCOMBE bulldozed ahead, anyway.

## No Personal Jurisdiction

Statutory Challenge – Art. 25.04.

At the heart of LIPSCOMBE's and STATE's habitual *defiance* of Due Process is Art. 25.04 and its relatively long-standing, and unconscionable, judicial support.  By that language, STATE purports to excuse itself, legislatively, from its

**No Notice.  No commercial nexus.**

duties under Due Process. That language suggests, effectively, that Notice to the court is identical to Notice to the party charged. The language facially defies all notions of fair play and substantial justice.

Burden-relieving.

LIPSCOMBE was 100% aware that STATE had *served* PERKINS with nothing. *See, e.g.*, 3.Tr.10(13) to .11(20); 4.Tr.71(6-24), .72(17-20).  LIPSCOMBE fully approved STATE's defiance of Due Process, at one point purporting to pervert standby counsel into a process server, a role "educated," "licensed," and Bar-ed up CAMPBELL *accepted*. 3.Tr.11(17-18); 4.Tr.71(6-24). Thus, fully in sync with Art. 25.04, LIPSCOMBE burdened PERKINS to figure out what the "charge" against him was, thereby relieving STATE of its Due Process duty of (timely, meaningful) *Service* of its original pleading.

**Panel-related matters**

Submission of anything to the advisory panel.

STATE never proved "transportation." Whole Record; 4.Tr.39(20) to .41(7); .49(7) to .51(4). Yet, by submitting any issue to the administrative advisory panel for recommendation, LIPSCOMBE again effectively denied PERKINS's Special Appearance and Plea to the Jurisdiction, *see* R.19-68 and the interlocutory

---
**No Notice.  No commercial nexus.**

appellate Record, and all four of his trial-time motions: two motions to dismiss, 6.Tr.100 and .108, 4.Tr.48 (denied (17)), 4.Tr.56-57 (denied .57(1-2), and two motions for directed verdict, 6.Tr.104 and .112, 4.Tr.48 (denied (25)), 4.Tr.57 (denied (5-6)). Also overruled were PERKINS's objections regarding submitting anything to any panel.  6.Tr.78-83.

<u>Fair trial – Unfairly biasing the panel.</u>

LIPSCOMBE upbraided PERKINS for his understanding of "transportation," which depends on the plainly stated discussion in *Lozman*. 4.Tr.15(6) to .16(13), .24(11) to .25(4), .48(6-20), .49(2) to .51(3), .140(16-22). *See also* 4.Tr.74(12) to .75(4).

Quite descriptive of LIPSCOMBE's perspective, but asserted outside the hearing of the panel, is this: 4.Tr.72(17) to .73(8); .74(6-8); 5.Tr.4(7) to .7(5).

LIPSCOMBE even went so far as to address his view of "the law" in the opening remarks to the Voir Dire panelists. 3.Tr.16(10) to .17(8).  In that recitation, LIPSCOMBE whirred "licensure" with "insurance" with the effectiveness of a cuisinart.

<u>Jury instructions.</u>

PERKINS objected to any and all instructions, 6.Tr.78-83, in part because there was no case to submit to any panel. After abusing PERKINS for

**No Notice.  No commercial nexus.**

*understanding* "transportation," and after having PERKINS run up the tab for the Transcript costs, 4.Tr.63(18) to .74(10), LIPSCOMBE refused to define "transportation" for the panel. 4.Tr.76(9) to .81(7), .84(3-17); R.184-88. He also refused to define "drive" in any grammatical form, "operate" in any grammatical form, or "vehicle," as well. *Id*.

The Transp. Code, as a system, is extremely semantical and algebraic. R.19, 56-64; R.86-107; R.190-94, [8] R.202, 209-19, 227-31; interlocutory appeal Record. For clarification of those relationships, PERKINS requested instructions. 4.Tr.63(18) to .74(10); 6.Tr.85-99. On his own motion, LIPSCOMBE included a definition of "motor vehicle," 4.Tr.57(17) to .58(9), and that's as close as he ever got to recognizing the law to which he's sworn at least two oaths of office.


**Trial/Evidence**

STATE's Ex. 1.

Having no "transportation" evidence, STATE never had foundation not only for the claim at bar but also for any "driving record" supplied by DPS. Because there's no "driving" going on, there's no relevance in any "driving record." No matter how "self-authenticating" that document may be, it's both irrelevant and unfairly prejudicial.

---

[8] Record is truncated.

**No Notice.  No commercial nexus.**

The commercial semantics.

From the outset, PERKINS has objected to the commercial semantics, in particular "transportation," "vehicle," "motor vehicle," "drive" (all grammatical forms), and "operate" (all grammatical forms). 2.Supp.Tr.11(8) to .13(1); 4.Tr.30(18) to .31(4); .31(8-21); .32(10-17); .45(25) to .46(10); .84(18) to .85(14); .103(14-18); .105(22-25); R.19 (Spec. Appear.); Record on appeal for interlocutory appeal; R.86 (Mot. in Limine); R.180 (Trial Brief after interlocutory appeal); R.202 (Mot. for New Tr.); 6.Tr.27 to .76. *See also* 6.Tr.77 to .115. LIPSCOMBE overruled the objections on all occasions.

## Void Judgment

No evidence – conviction.

To preserve his "no evidence" points, PERKINS filed his Motion for New Trial. R.202-33.  As PERKINS proved, STATE had no evidence of, thus never proved, "transportation." Whole Record; 4.Tr.39(20) to .41(7); .49(7) to .51(4). Nonetheless, LIPSCOMBE accepted the advisory panel's recommendation of guilt regarding STATE's "transportation"-based, morphed, hodgepodge "charge."

No Notice – what was/is the charge?

STATE's claim morphed from

(A) "driving while license suspended," R.13, 14, 195, 4.Tr.10 (the language

---

**No Notice.  No commercial nexus.**

of the **Information**), to

(B) "driving while license invalid," R.1, 5, 6, 7, 116, 146, 201, 238, 2.Tr.4, 3.Tr.4(1-3), 3.Tr.16(13-14), 3.Tr.20 (CHU says that "suspended" and "invalid" are the same thing; nothing specific mentioned about how "expired" fits in; 4.Tr.52(4-13)), 5.Tr.5(23-24), to

(C) "DWL INV W/PRV CAN/SUP/WO FN RE," whatever that is, R.108-11, R.112-15, R.168-71, R.172-75, 198 (some translation assistance is found here: "DRIVING W/LIC INV W/PREV CONV/SUSP/W/O FIN RES" is very likely to mean "driving while license invalid with previous conviction/suspension without financial responsibility"), 4.Tr.111(11-13), and finally to

(D) "Driving While License Invalid without Financial Responsibility," R.184, 189, 4.Tr.88(5-10), 4.Tr.105(8-11), 4.Tr.110(7-11, 14-15), 4.Tr.114(14) to .115(10), .116(13-15), 4.Tr.132(6-12) (the language of the **trial**).

Whatever that morphed hodgepodge ended up being, even if STATE *had* served its original pleading, STATE never gave Notice of the claim, for even the charging instrument doesn't allege the claim tried. [9]

---

[9] The Information, which was never served, appears to charge two very *separate* matters: "driving" (motor vehicle) with *legally* "suspended" license and "operating" (motor vehicle) without insurance. Whether or not that's even a legit hodgepodge, there's no "driving" or "operating" without "transportation," i.e., without a passenger manifest and hire or a bill of lading and hire or both a passenger manifest and a bill of lading along with hire.

**No Notice.  No commercial nexus.**

<u>Illegal sentencing – Probation – "ultimate issue."</u>

As for the sentence, there's no evidence supporting "guilt." Moreover, regarding probation, we're into another "ultimate issue" problem. R.190-94. [10] A condition of probation is "no driving." Another condition is "buy insurance." R.195-97; 5.Tr.7(6) to .9(25).

## Developing emergency

As of July 27, 2014, *another* set of "transportation" matters exist. Judicial Notice. The new county-level matter has recently been transferred (from 6 to 3). PERKINS finds no basis for that transfer, for there is no active probation. Either way on that, during the arrest, PERKINS saw the screen used by the arresting officer. The "Remarks" section includes "DANGEROUS, GANG INFO."

That plus the use of PERKINS as a whipping boy for the County Attorney's Office's and LIPSCOMBE's political vendetta, which screams from the pages of this Record, against the "sovereignty" movement, which "defense" sounds in *politics* **not** commercial fact/law, PERKINS deduces that STATE **politically indoctrinates** police officers on "sovereignty" stuff *rather than* **trains** them on the definition of "transportation." Because that's the police training, the attorney training, and the judicial training, they all "see" "sovereignty" activity where

---

[10] Record is truncated.

**No Notice. No commercial nexus.**

there's no jack-boot-licking, no matter *what* the defense is.  Such false, inflammatory "Remarks" affect the officers at the scene. While no use of excessive force has occurred, yet, **PERKINS *is* constantly *arrested* for asserting his "right not to contract."**  Given the epidemic of physical abuse during arrests throughout "this state," PERKINS is also now concerned for his physical well-being due to STATE's deliberate indifference regarding the failure to train, self-proved by (1) the false, inflammatory "Remarks" and (2) STATE's addiction to compelling PERKINS into court over "transportation" matters where there is no "transportation" in sight.

Not only is, "I'm not in transportation" *not* a/the *"sovereignty"* position! but also, in a *lawful* society, **it's the fact that ends the matter**.  Therefore, this court's following the Supreme Court's lead, *Lozman*, in addressing "transportation" for what it *is*, so that competent *legal* training replaces inciteful, even dangerous, **political indoctrination**, will go a *long* way in curing this national epidemic that is spreading in Central TEXAS.

_____

## Summary of the Argument

At trial, PERKINS alone understood "transportation."

LIPSCOMBE never had personal jurisdiction. STATE never *served* its original pleading; PERKINS never waived Notice, and Art. 25.04 *facially* defies Due Process.

LIPSCOMBE never had subject matter jurisdiction. STATE never proved "transportation," i.e., standing, i.e., any "actual grievance" or "injury in fact." PERKINS never removed anyone or anything from one place to another for hire in "this state." STATE never even tried to prove up any passenger manifest, bill of lading, or hire.

LIPSCOMBE and STATE succeeded in making a political statement against the "sovereignty" movement. They wholesale failed to prove up a "transportation" case. There is no evidence supporting the judgment, which is void.

Vacate and remand with instructions to dismiss.

**No Notice. No commercial nexus.**

**Argument**

## Overview

LIPSCOMBE erred and/or abused discretion continuously.

By

Bond-jacking, which was a quasi-"criminal" trial without any charging instrument, time to prepare, advisory panel, evidence of standing, commercial nexus, or breach, *or* final ruling subject to direct appeal; R.6, 9, R.116-17, R.118, 146, 147; 1.Supp.Tr, 2.Supp.Tr, and 3.Supp.Tr (all);

overruling/denying PERKINS's Special Appearance and Plea to the Jurisdiction; R.19-68; (merger into final ruling);

compelling PERKINS to plea into a vacuum; 4.Tr.11(1-16);

overruling PERKINS's objections to the semantics, effectively compelling PERKINS's commercial consent; e.g., **2.Supp.Tr**.11(8) to .17(18) ("driving," "vehicle," "motor vehicle"); **4.Tr**.30(12) to .31(4) ("drove"); .31(5-22) ("vehicle"); .32(10-17) ("drive"); .39(18) to .41(7) (no evidence of any passenger manifest or of any bill of lading or of hire); .45(14) to .46(10) ("vehicle"); .73(9) to .74(11) (semantics, in toto); .74(12) to .75(5) ("transportation" and "drive"); .85(4-14); **6.Tr**.27-115;

appointing standby counsel; R.6, 12, 200; 3.Tr.4(9) to .6(25); .11(21) to .12(18);

**No Notice.  No commercial nexus.**

allowing fact witnesses to assert (terms of) legal conclusion(s) without evidence, again effectively compelling PERKINS's commercial consent; e.g., **2.Supp.Tr**.11(8) to .17(18); **4.Tr**.30(12) to .31(4) ("drove"); .31(5-22) ("vehicle"); .32(10-17) ("drive"); .45(14) to .46(10) ("vehicle");

denying/overruling PERKINS's trial-time motions to dismiss; 6.Tr.100 and .108, 4.Tr.48 (denied (17)), 4.Tr.56-57 (denied .57(1-2);

denying/overruling PERKINS's trial-time motions for a directed verdict; 6.Tr.104 and .112, 4.Tr.48 (denied (25)), 4.Tr.57 (denied (5-6));

by submitting anything at all to the advisory panel;

by overruling PERKINS's objections to the Instructions; 4.Tr.58(5-6), 6.Tr.77-83;

by denying/overruling PERKINS's Proposed Instructions, 4.Tr.63(18) to .74(10), 6.Tr.84-99, refusing to define "transportation," "drive," in its various grammatical forms, "operate" in its various grammatical forms, and "vehicle;" 4.Tr.76(9) to .81(7), .84(3-17); R.184-88;

by accepting the panel's recommendation of guilt in the face of there being no evidence of "transportation;"

by accepting the panel's recommendation of guilt in the face of there being no evidence of "motor vehicle;"

by sentencing PERKINS without evidence of guilt;

**No Notice.  No commercial nexus.**

by adding "ultimate issues" as conditions of Probation; R.190-94, R.195-97; 5.Tr.7(6) to .9(25); and

by denying PERKINS's motion for new trial; R.202-33; R.234-37;

LIPSCOMBE has no idea what "transportation" is, as he proved repeatedly throughout the fiasco he promoted and encouraged and called a trial.

The professional incompetence factor – why pro ses are pro se.

When it comes to "transportation," the prosecutors (WASHBOURNE, CHU), the stand-by defense counsel (CAMPBELL), who should *never* have been appointed, because PERKINS *is not* indigent and this is a "civil" matter not arising in the Family Code, and the judge (LIPSCOMBE), have no remote clue what they're talking about or doing. The reality is a wicked paradigm shift to the "educated and licensed" legal professional. Why is that? Why do the professionals **_defy_** the law to which they've sworn oaths? This system deliberately mistrains the professionals, thereby **_compelling_** politically targeted individuals to go pro se, and then blasts them for doing so. Why is that?

STATE is begging for vexatious litigant status.

As is STATE's **_habit_**, STATE tendered **no evidence** that PERKINS (A) removed anyone or anything, (B) from one place to another, (C) for hire, (D) under

_____

Appellant's Principal Brief (PERKINS)                                              20
**No Notice.  No commercial nexus.**

any choice of law, including "this state." The conviction also rails against the great weight of the evidence.

<u>Pre-trial and perpetually factless judgment on the ultimate issue: "driving."</u>

"Driving" is *commercial* activity.  Period.  It's not a generic term; it's a very specific *commercial* term of **legal conclusion**. "Driving" does not include "travel."

LIPSCOMBE buys into the marketing instead of our present commercial reality. He judged PERKINS as a "driver" from the outset without one shred of evidence; hence, the illegal Bond-jacking (prompting the interlocutory appeal). LIPSCOMBE also included the ultimate issue, "(no) driving," as a probation condition in a case that included not one *moment* of "driving," ever. Shy of vacating completely, there's no effective remedy for LIPSCOMBE's unilaterally rewriting the law, to the support of which he's sworn at least two oaths, by which rewriting he perverts "travel" into "transportation."

The conviction is facially illegal. So is the sentence. The probation conditions, (A) get a license and (B) purchase insurance, egregiously violate PERKINS's rights (1) not to contract, (2) not to engage in this or that line of commerce, and even (3) of association, which includes the right *not* to associate.

---

**No Notice.  No commercial nexus.**

Instead of trying a "transportation" matter, LIPSCOMBE, WASHBOURNE, and CHU unleashed their political attack.

This is *Lozman II*. Identically, this case *turns* on "transportation." Identically, this prosecution pimped a political vendetta, presenting **no evidence** of "passenger(s)," "cargo," *or* "hire." Identically, the "legal" standard applied judicially ***defies*** the law of "this state."

LIPSCOMBE, WASHBOURNE, and CHU never even *considered* trying a "transportation" matter. Mindlessly bloviating from Day One that this alleged Transp.-Code-based matter required absolutely no evidence of "transportation," they effectively caned PERKINS, their whipping boy, head to toe, to rage against the "sovereignty" movement. LIPSCOMBE *totally* relieved STATE of its burden, and the panel was given ***facially*** inadequate instructions, which should never have been issued, because STATE facially failed to present a case that could *go* to an advisory panel. Yet, LIPSCOMBE ***refused*** to dismiss *or* direct the verdict.

It's outright sickening to watch "professionals" ***refuse*** to distinguish between (A) "Go to hell; I have self-assigned, ambassadorial-level (or even god-like) immunity (never mind there's no treaty or political recognition)," and (B) "You have no evidence."

---

**No Notice.  No commercial nexus.**

<u>"Civil" from Day One.</u>

STATE's non-case was never a "criminal" matter, but always a non-case; hence, ***"civil,"*** from the word Go.

<u>PERKINS's Special Appearance.</u>

STATE never had an "actual grievance" or "injury in fact." That follows directly from PERKINS's never engaging in "transportation." Thus, LIPSCOMBE never had subject matter jurisdiction.

Still relying on Art. 25.04, which flagrantly defies Due Process, which defiance LIPSCOMBE fully supports, STATE never Served PERKINS with ***any*** charging instrument. Thus, LIPSCOMBE never had personal jurisdiction.

<u>Vacate the void "judgment."</u>

Vacate LIPSCOMBE's oath-defying, law-defying, evidence-defying conviction and sentence of PERKINS. Remand with instructions to dismiss. Don't dismiss on appeal. Make LIPSCOMBE dismiss. He might listen next time.

Order **STATE** (A) to refund PERKINS's Bonds, *with* interest, (B) to reimburse PERKINS for all costs of trial and appeal, including the Transcripts, *with* interest, and (C) <u>***never***</u> to touch PERKINS again for a "transportation" matter without ***evidence*** of "transportation."

Order **LIPSCOMBE**, **WASHBOURNE**, **CHU**, **all** other participating

**No Notice.  No commercial nexus.**

prosecutors, plus their boss, the elected County Attorney, and even **CAMPBELL**, to turn in to *this* court a legible, hand-written paper, a photocopy of which to be served on all parties, that repeats 100 times the following:

All "transportation" is commercial activity.

"Travel" is not "transportation." "Travel" is non-commercial activity.

Every claim/charge arising from the Transp. Code depends 100% on evidence of "transportation."

"Transportation," a term of legal conclusion, means (1) removing people and/or property (2) from one place to another (3) for hire (4) in "this state."

"Vehicle," a term of legal conclusion, means a conveyance used for transportation purposes.

"Motor vehicle," a term of legal conclusion, means a vehicle with a motor. [11]

In Texas, "drive," a term of legal conclusion, defined not in Chap. 521 but rather only in and for Chap. 522, means being behind the wheel of a motor vehicle.

In Texas, "operate," a term of legal conclusion, means to be behind the wheel of either a vehicle or a motor vehicle.

Only those engaging in "transportation" can ever be "driving" or "operating."

Only those engaging in "transportation" can ever be in a "vehicle" or a "motor vehicle."

Only those engaging in "transportation" ever need a "license."

---

[11] PERKINS will accept the alternative of using LIPSCOMBE's definition for "motor vehicle" for this sentence.

**No Notice.  No commercial nexus.**

Only those engaging in "transportation" ever need "insurance."

STATE cannot relieve itself of its Due Process duties. Art. 25.04 has always been, is now, and will forever be facially repugnant to Due Process. STATE must not only file its original pleading but also must Serve that original pleading on the respondent at a meaningful time in a meaningful manner. Obviously, Notice to the trial court is *not* Notice to the respondent.

I have taken an oath to support the law above, which, as a professionally educated, "licensed," and active member of the Bar of the State of Texas, I learned from self-taught *pro se* PERKINS.

ORDER **CHU** to turn in to *this* court and serve a photocopy of on all parties

a legible hand-written paper that repeats 100 times the following:

My God, you guys! My God! Do you realize that alcohol was never even remotely relevant to this matter? Do you realize further that where there's no "driving," there's no "driving while intoxicated?"

My God, you guys! My God! I just compelled PERKINS to expose publicly the ultimate defense for every single charge throughout "this state" for which "transportation" is a material element.

My God, you guys! My God! PERKINS has applied the law to which, as a prosecutor, I've sworn at least two oaths of support.

My God, you guys! My God! I intend to send a message by saying that I learned this law from *pro se* PERKINS, who didn't write this law. He learned it on his own, while I have a formal legal education, a "license" to "practice law" in "this state," and an active Bar membership.

Also, STRIKE Art. 25.04 as defiantly repugnant to Due Process.

---

**No Notice.  No commercial nexus.**

For further and additional background and discussion, see the Interlocutory Appeal for this matter, No. 03-13-00813-CR (should be –CV), and the Direct Appeal involving the muni. court matters, Nos. 03-14-00305-CR, 03-14-00306-CR, 03-14-00307-CR,  03-14-00308-CR, 03-14-00309-CR, and 03-14-00310-CR (All should be –CV), all styled PERKINS v. STATE.

---

**No Subject Matter Jurisdiction and related matters**

<u>Statutory Challenges – definitions.</u>

**Issue 1:       What does "transportation" mean?**

R.19, 29-32, 56-60, 64, 65; R.86-102, 106; R.180, 182; R.190-92; R.202, 209-15, 219; 6.Tr.27-38, 87-89; .65 to .76.

<u>Not defined in the Transp. Code.</u>

The term "transportation" is nowhere defined in the Transp. Code.

On the one hand, a term doesn't have to be defined to be agreed/consented to.  On the other, where there's no agreement and no consent, as is the situation at bar, the fact that STATE refuses to define the term on which the entirety of its Transp. Code depends hardly means that there's no definition. It just means we have to do some digging to find it.

---

Appellant's Principal Brief (PERKINS)                                                    26

Per the recent *Lozman* ruling, "transportation" means "carrying passengers or cargo." *See Lozman*, Part IV.

Defined.

***Removing people and/or property.***

Transp. Act of 1940, 54 Stat. 898, 929, 49 U.S.C. § 902(i)(1), in particular § 302(i)(1). *Cornell Steam-boat*, 321 U.S. at 641-42 (Frankfurter, J., dissent). *Cf. Lozman* (passengers or cargo).

***From one place to another.***

*Cf. Maynard* (context: unlawful "transportation" of intoxicating liquor). *Cf. Lozman*.

> **transportation**, *n.* (16c) **1.** The movement of goods or persons from one place to another by a carrier. … .

BLACK'S LAW DICTIONARY 1638 (9th ed. 2009) (all emphasis in original).

***\*\* For hire. \*\****

*See Lozman*, Part IV ("carrying passengers or cargo").

*St. Clair Cnty*, 192 U.S. at 456-57 (allegations regarding operating a ferry without a license). *See also Cosio*, 182 S.W. at 85.

Again, there's BLACK'S LAW DICTIONARY.

> **transportation**, *n.* (16c) **1.** The movement of goods or persons from one place to another by a carrier. … .

---

BLACK'S LAW DICTIONARY 1638 (all emphasis in original).

> **carrier. 1.** an individual or organization (such as a ship-owner, a railroad, or an airline) that contracts to transport passengers or goods *for a fee*. Cf. SHIPPER. [Cases: Carrier ☞ 3, 235.] … .

*Id*. at 242 (***emphasis*** added).

### *Under the choice of law of the "place" called "this state."*

Where "hire" is be paid with "funny money" (US "dollars," federal reserve notes), this element is satisfied. There is **no evidence** of "hire" using *any* medium of exchange, much less any exchange of "funny money," in *any* amount.

Going deeper into the definition – "transport."

Is "transport" different from "transportation" materially or just grammatically? What do "transport" and "draw" mean? "Draw" *can't* have a wider scope than "transport," for all the reasons that "transport" is limited to the commercial context.

*See* Black's 9th ed.; Black's 5th ed.; *Salz* ("To transport means to convey or carry from one place to another[.]" 273 U.S. at 329.) ("transport" activity was *for hire*); Webster's Dictionary of 1828 (**TRANSPÖRT**, *v. t.* [L. *transporto* ; *trans* and *porto*, to carry.]; **TRANS´PÖRT,** *n.*; **TRANSPORTA´TION,** *n.*) ("transport" and "transportation" differ only grammatically); *Hinton*, 222 F.3d at 672 (the Post Office does what it does *for hire*); *Bearden*, 320 F.2d at 103; *Michigan*, 911 F.

---

**No Notice.  No commercial nexus.**

Supp. 2d at 765; *Marshall*, 459 F. Supp. at 97-98 (Mireles (1) removed people *and* property (2) from one place to another *(3) for hire*); *Lacross* ("transportation" as a criminal drug offense);  *Cuellar* ("[*H*]ow one moves the money is distinct from *why* one moves the money. Evidence of the former, standing alone, is not sufficient to prove the latter."); *Alalunga Sport Fishers*; *Dragich*;  *Hammell*; and TEX. PENAL CODE § 46.15(b)(3)) (overtly distinguishing between "transportation" and "travel").

  <u>The difference between "how" and "why."</u>

  What LIPSCOMBE, WASHBOURNE, and CHU can't distinguish is the "how" (by car) from the "why" (for hire). "How" is all that matters to them despite the fact that the Supreme Court launched that "how only" perspective directly into the sun via *Lozman*.  Per *Lozman*, it's precisely the *why* question that controls the result, and it's City of Riviera Beach's wholesale failure to prove *why*, i.e., to prove commercial intent, i.e., specifically, to prove "passengers or cargo," that led to that "no transportation," thus no "vessel," thus "no jurisdiction" ruling in Lozman's favor.

<u>"No evidence" standard.</u>

"No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller*, 168 S.W.3d at 810 (quoting CALVERT, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. at 362-63).

The relevant concepts are (a) and (d).

<u>There's no evidence of "transportation."</u>

STATE has no evidence, because none exists, of any passenger manifest, of any bill of lading, *or* of any hire. Whole Record; 4.Tr.39(20) to .41(7), .49(7) to .51(4). None was even asked into at the time of the stop. 4.Tr.39(20) to .41(7). STATE couldn't and didn't prove up "transportation," and PERKINS never consented to any of the commercial semantics.

<u>The algebraic dependence of these other terms on "transportation."</u>

For the "transportation"-related statutory challenges that follow, the point is that STATE couldn't and didn't prove **any** element of **any** Transp. Code claim, because they couldn't and didn't first prove "transportation." As a term, "transportation" is a term of legal conclusion, not of fact, but of legal conclusion.

_____

Appellant's Principal Brief (PERKINS)                                    30
**No Notice.  No commercial nexus.**

Similarly, *all* these terms are terms of legal conclusions, not facts, but legal conclusions. *All* these terms depend directly on proof of "transportation." And, there is no such proof.

Without evidence of "transportation," i.e., the removing of someone ("passenger") and/or something ("cargo") from one place to another *for hire*, cf. *Lozman*, it follows as a matter of law that there is also *no* "vehicle," *no* "driver," *no* "motor vehicle," **_and_** *no* "operator."

**Issue 2:      What does "vehicle" mean?**

R.19, 60, 64; R.86, 102; R.202, 215, 219; 6.Tr.27, .38, .55 to .59, .84, .89.

*See* Issue 1.

TRANSP. CODE §§ 502.001(24), 541.201(23), 621.001(9), 750.003(a).

Translation:  a conveyance *used* for "transportation" purposes.

Application of statutory algebra: If no "transportation," then no "vehicle."

For STATE's fact witness to assert "vehicle" is for that witness to assert a legal conclusion, not a fact. That legal conclusion depends, in part, on there being evidence of "transportation."  There is **no evidence** of "transportation," and PERKINS never consented to the semantics.  Therefore, it's legally *impossible* for there to be a "vehicle."

LIPSCOMBE focused not on "for hire" (the "why") but rather solely on the

**No Notice.  No commercial nexus.**

car (the "how"), including whose hand is on the wheel or whose foot is on the brake. That proves "behind the wheel" (in most situations). ***But***, that begs the very question at issue here:  behind the wheel ***of what?*** <u>**A "vehicle."**</u>  <u>***What's* a**</u> <u>**"vehicle?"**</u>  A conveyance ***used*** for "transportation" purposes.

STATE has **no evidence** of "transportation," and PERKINS didn't consent to any of the semantics.  Therefore, there is ***no*** "vehicle."


**Issue 3:     What does "motor vehicle" mean?**

R.19, 61, 64; R.86, 103; R.202, 216, 219; 6.Tr.27, .40, .60 to .64, .84, .89 to .90.  *See also* Issues 1 and 2.

TRANSP. CODE §§ 501.002(14), 502.001(13), 522.003(21), 541.201(11), 601.002(5), 642.001(1), 647.001(4), 683.001(4), 728.001(2).

Translation: "Vehicle" with a motor.

Application of statutory algebra: If no "transportation," then no "vehicle;" if no "vehicle," then no "motor vehicle."

The term "motor vehicle" is a legal conclusion, not a fact. For there to be a "motor vehicle," STATE must first prove "transportation." There is **no evidence** of "transportation," and PERKINS never consented to the semantics.  Therefore, it's legally *impossible* for there to be a "motor vehicle."

Additionally, regarding the liability phase, there is also not one word of

**No Notice.  No commercial nexus.**

direct evidence about any "motor" or "self propulsion." This intends to be an exhaustive list: **2.Supp.Tr**.13(18-20), .15(18-21); **3.Tr**.20(7-13), 21(14-17); **4.Tr**.10(14-23), .13(14-20), .27(18-23), .27(24) to .28(14), .37(10-13), .38(23) to .39(20), [12] .57(16) to .58(10), .58(10-23), .65(19) to .66(2), .66(3-10), .66(11-20), .66(21) to .67(5), .76(9) to .77(3), .77(7-8) (the sole reference to "self-propelled"), .77(14-23), .77(24) to .78(9), .78(10-25), .81(10) to .82(14). *See also* **4.Tr**.88(18) to .89(1) (context – damages phase), .91(16) to .93(13), .93(17) to .95(12), .98(4) to .99(2), .99(16) to .101(7), .101(8) to .110(4); **5.Tr**.9(9-25).

If "motor vehicle" is somehow implied, then we're back to the fact of no evidence of "transportation" and no consent to the semantics.

**Issue 4:    What does "drive" mean?**

R.19, 61-62, 64; R.86, 103-4; R.180, 182; R.190, 192-94; R.202, 216-17, 219; 6.Tr.27, .39, .44 to .48, .84, .90. *See also* Issues 1, 2, and 3.

TRANSP. CODE § 522.003(11).

LIPSCOMBE doesn't understand; WASHBOURNE doesn't understand; CHU doesn't understand; thus, the panelists never had a chance of understanding.

The *sole* definition for "drive" in the entire "transportation" code is found in the "*commercial* driver's license" chapter, Ch. 522. **It's not even in Chap. 521!**

---

[12] This reference to the Record in no way waive objection to STATE's Ex. 1.

Translation: In the disciplined "transportation" code, "drive" means being behind the wheel of a "vehicle." In the Tex. Transp. Code, "drive" means being behind the wheel of a "motor vehicle."

Application of statutory algebra: If no "transportation," then no "vehicle;" if no "vehicle," then no "motor vehicle;" if no "motor vehicle," then no "driving;" hence, no "driver."

The term "drive" in any of its grammatical forms is a term of legal conclusion, not of fact. For there to be any "driving," STATE must first prove "transportation." There is **no evidence** of "transportation," and PERKINS never consented to the semantics. Therefore, it's legally *impossible* for there to be any "driving."

Being "behind the wheel," by itself, with nothing more, is ***not "driving."*** The following intends to be exhaustive of the events and contexts suggesting STATE's and LIPSCOMBE's perspective that "driving" means and includes "travel:" the threshold arrest on the street; the whole pre-trial context (therefore, why the Spec. Appear. and Plea/Juris didn't even get set for hearing), including R.13, 14, also including the whole of the Bond-jacking episode, e.g., 2.Supp.Tr (all), including **2.Supp.Tr**.5(5-17), .6(15) to .13(2), .13(3) to .17(17), and up through voir dire, including **3.Tr**.4(1-9), .7(3) to .9(6), .16(10) to .17(8), .20(1) to .23(14), (intervening discussion on "traffic" implies a perspective that "driving"

means and includes "travel," but "drive" isn't specifically mentioned), .26(2-24), .27(4) to .28(9); the whole of the liability determination phase, including **4.Tr**.10(8-25), .12(17) to .15(1), .15(6) to .16(13), .17(21), .22(10) to .24(2), .26(17) to .42(12), .48(1) to .49(1), .49(14) to .57(16); the whole of the "Charge Conference, including .57(17) to .73(8), .73(9) to .74(10), .74(12) to .75(5), .76(9) to .81(7), .81(8) to .83(25), .84(1) to .86(4), .89(12) to .90(5), .91(15) to .95(12), .95(23), .97(11) to .99(2), .99(17) to .100(22), .101(8-9), .102(10) to .109(16), .111(9) to .114(8), .117(1) to .119(6), .119(12) to .120(7), .121(6) to .122(18), .133(5) to .134(21), .134(22) to .140(22); the whole of the damages phase, including **5.Tr.**4-9. Everything about this matter, from Day One, is indelibly tainted by the perspective that "driving" includes that *non*-commercial activity known as "traveling."

"Driving" means being behind the wheel *of a "motor vehicle."* That **begs** the question: **What is a "motor vehicle?"** As already demonstrated, a "motor vehicle" is a conveyance *used* for transportation purposes (i.e., a "vehicle") that has a motor.

"Driving" is 100% **_commercial_** activity. Being behind the wheel of a non-commercially-used conveyance, as is the fact pattern here, is "traveling," which activity is totally and completely beyond the scope of the Transp. Code. And, to make another related point, while "drivers" need "licenses" and "insurance,"

_____

**No Notice.  No commercial nexus.**

"travelers" do not.

**Issue 5:     What does "operate" mean?**

R.19, 62-63, 64; R.86, 105-06; R.202, 217-18, 219; 6.Tr.27, .40, .49 to .54, .84, .90 to .91.  *See also* Issues 1 to 4.

TRANSP. CODE § 541.001(1).

Translation: In the disciplined "transportation" code, an "operator" is behind the wheel of a "motor vehicle."  In the TEX. TRANSP. CODE, an "operator" is behind the wheel of either a "vehicle" *or* a "motor vehicle."

The "definition" is very confused.  "Drives," which has meaning only with respect to a "***motor vehicle***," is juxtaposed with the concept of "physical control of a *vehicle*."  Ultimately, it doesn't matter, here, because there is no "transportation," but which is it: "vehicle" or "motor vehicle?" [13]

Application of statutory algebra: No "transportation?"—no "vehicle;" no "vehicle?"—no "motor vehicle;" no "(motor) vehicle?"—no "operator."

The term "operate" in any of its grammatical forms is a term of legal conclusion, not of fact. For there to be any "operating," STATE must first prove "transportation." There is **no evidence** of "transportation," and PERKINS never

---

[13] *See also* §§ 601.002(8) ("motor vehicle"), 642.001(2) (same), 647.001(5) (same); § 724.001(11) (looks to a "motor vehicle" or watercraft, i.e., "transportation" activity); § 24.013(f)(2) (regarding aircraft).

**No Notice.  No commercial nexus.**

consented to the semantics.  Therefore, it's legally *impossible* for there to be any "operating."

Being "behind the wheel," by itself, with nothing more, is ***not*** *"operating."* Being behind the wheel ***of a "(motor) vehicle"*** is *"operating."*  That ***begs*** the question: **What is a "(motor) vehicle?"**  As already demonstrated, a "vehicle" is a conveyance ***used*** for transportation purposes, and a "motor vehicle" is a "vehicle" with a motor.

"Operating" is 100% ***commercial*** activity. Being behind the wheel of a non-commercially-used conveyance, as is the fact pattern here, is "traveling," which activity is totally and completely beyond the scope of the Transp. Code. And, to make another related point, while "operators" need "licenses" and "insurance," "travelers" do not.

**Issue 6:      What does "this state" mean?**

R.19, 63-64; R.202, 218-19.

The "place" called "this state" is that "place" in which the use of "funny money" is not instantly fraud. The "place" called "this state" is a "choice of law" "place" that is very separate and distinct from the Land. The alternative to "funny money" is honest weights and measures, e.g., silver and gold Coin, which is where America started.  That changed circa 1965, when the last vestiges of silver were

---

sucked out of general circulation.

To satisfy element (4) of "transportation," STATE would have to prove "hire" in the form of "funny money." Since STATE has **no evidence** of "hire," there is **no evidence** of any exchange of "funny money." In application of "this state," then, STATE has **no evidence** of "transportation," i.e., **no evidence** of commercial intent, for there is no evidence of "hire" in the form of "funny money."

No evidence – Standing.

**Issue 7:      Did STATE ever prove standing, i.e., "transportation?"**

Record references. *See* "No evidence – Standing," p.1, and Issues 1 to 6. *See also* "No evidence standard," p.30.

In application of the commercial semantics.

PERKINS was not engaged in "transportation." He was at no time (1) removing anyone or anything (2) from one place to another (3) for hire (4) in "this state." Issue 1. Therefore, there was *no* "vehicle," *no* "driver," *no* "motor vehicle," *and no* "operator." Issues 2-5. Moreover, at no time did any officer even make inquiry into any passenger manifest, bill of lading, or hire. 4.Tr.39(20) to .41(7). Thus, no officer *ever* had authority to charge PERKINS with *any* violation of the Transp. Code. In sum, STATE has never had any "actual grievance," *Tex. Dept. of*

_____

**No Notice.  No commercial nexus.**

*Parks & Wildlife v. Miranda* (standing, plaintiff must show "actual grievance"), i.e., never had any "injury in fact," *Heckman*, 369 S.W.3d at 154-55 (citing *Lujan,* 504 U.S. at 560-61), which means that LIPSCOMBE never had subject matter jurisdiction. The "judgment" against PERKINS is void.

<u>Burden-relieving.</u>

**Issue 8:** **Did LIPSCOMBE relieve STATE of its evidentiary burden?**

Record references. *See* "Burden-relieving," p.2, and Issues 1 to 7.

LIPSCOMBE overtly asserted that STATE didn't have to prove "transportation," 3.Tr.8(14-20), and, as shown for the preceding Issues, he constantly "corrected" (overruled) PERKINS when PERKINS insisted on proof (objected to the assertion of legal conclusions without facts or consent).

***Any*** "transportation" matter turns on commercial intent. *Lozman*. STATE ***never*** proved that PERKINS ever (1) removed anyone or anything (2) from one place to another **(3) for hire** [(4) under *any* choice of law].

Thus, given STATE's total lack of evidence, Whole Record, 4.Tr.48(1-20), .56(15) to .57(2), LIPSCOMBE relieved STATE of its burden by doing anything but dismissing. *Cf. Scott* (summary judgment, video of car chase relevant) (citing *Diebold*, 369 U.S. at 655; *Anderson*, 477 U.S. at 255) (summary judgment presumptions are ***against*** movant); *Sandstrom* (presumption that shifted burden of

**No Notice.  No commercial nexus.**

persuasion on culpable mental state violated Due Process); *Mullaney* (citing *In re Winship*) (to relieve plaintiff of burden is to violate Due Process); *Heiner*.

See also *Brown*, 122 S.W.3d at 799 (burden-shifting nature of mandatory presumptions – homicide context); *Pennock*, 725 S.W.2d at 415-18 (jury instruction on intent, in full context of case, established impermissible presumption causing egregious harm); *Hall*, 661 S.W.3d at 104 (citing *County Court of Ulster County*, *Leary*; *Tot*, *Sandstrom*; *Johnson*, and *Mullaney* – obscenity context – ultimately finding no improper presumption regarding Hall).

<u>Use of irrebuttable presumptions violates Due Process.</u>

Despite STATE's ***total*** lack of evidence, Whole Record, 2.Supp.Tr (all), 4.Tr.39(20) to .41(7), .49(7) to .51(4), and despite PERKINS's affirmative, uncontroverted evidence ***negating*** "transportation," *id*., thus ***negating*** commercial intent, *STATE* and LIPSCOMBE irrebuttably **presumed** commercial intent, which burden-shifting perspective flatly and flagrantly violates Due Process. *See Elkins*; *Salfi* (in particular part III, which distinguishes *Salfi*); *Cleveland Bd. of Educ.*; *Vlandis*; *Stanley*.

---

**No Notice.  No commercial nexus.**

Nature of claim.

**Issue 9:      Did STATE ever have a "criminal" case?**

Record references. *See* "Nature of claim," p.2, and Issues 1 to 8, 18 and 19.

Where there is no *personal* jurisdiction, the matter is a non-case. Where there is no *subject matter* jurisdiction, the matter is a non-case.  All cases are non-cases, *cf. Austin* (Blackmun, J., dissent); *Deposit Guaranty Nat'l Bank*, 445 U.S. at 353 (Powell, J., and Stewart, J., dissent); *Williams*, 472 U.S. at 36 (dissent) (citing *Austin*), i.e., **civil**, until STATE proves Notice and standing.  Some matters, just like this one, never stop being non-cases.  *Cf. Rockwell Int'l Corp.* (the final pre-trial order confirmed that this was a non-case).

Due to intentional refusal to **serve** PERKINS with STATE's original pleading, LIPSCOMBE never had personal jurisdiction. Issues 18, 19.

Due to STATE's wholesale failure to prove up "transportation," *see* Issue 1, STATE never had standing, Issue 7, meaning that LIPSCOMBE never had subject matter jurisdiction.

Since all non-cases are **civil** in nature, it follows that LIPSCOMBE never had subject matter jurisdiction over STATE's claim.

**No Notice.  No commercial nexus.**

<u>Appointment of standby counsel.</u>

**Issue 10:    May standby counsel be appointed for this "civil" matter?**

Record references.  *See* same heading in Statement of Facts, p.2. *See also* Issue 9, Issues 1 to 8, and Issues 18 and 19.

Key, PERKINS is not indigent. 3.Tr.4(9-16). Plus, this was never a "criminal" matter, but rather always a non-case; hence, "civil."

PERKINS notes that Art. 1.05 allows pro se, representation, or *both*. The Second Circuit notes the logical impossibility of "both." E.g., *Jones v. Artuz*, 96 Fed. Appx. 742 (2d Cir. 2004) (otherwise unpublished). Nonetheless, PERKINS contends that appointment still can't happen without satisfaction of the threshold requirement of indigence.  So, "both" can apply *only* to the indigent, for *only* the indigent are eligible for appointment.

On the other hand, while the statutes and cases *compel* appointment for indigent in matters that involve possible incarceration, *cf.* Art. 42.15 (even indigent don't get counsel for Class Cs), there's no statute or ruling that overtly *prohibits* appointment for non-indigent where the court deems justice so requires.

In light of *Rothgery*, there's considerable standby appointment activity. [14]

---

[14]  Rather unscientific study results.  A particular electronic database counted right at 200 "standby counsel" rulings. Of that 200, only 50 mentioned indigency. That's 150 rulings that involve appointment *without* overt mention of indigency. PERKINS expects the bulk of those 150 will post-date *Rothgery*.

**No Notice.  No commercial nexus.**

*Gideon*, is a *national* standard; so, yes, *any* STATE may provide *more* than the minimum, national standard of protection of rights. But, even STATE's standard is conditioned at the threshold by indigency. Art. 1.051; R.200. Note how very blank that form is. R.10, 199.

The entire concept of appointment has to do with economics, *not* age, experience, education, etc. Appointment of standby counsel over PERKINS's objection actually, ironically, risks violating PERKINS's statutory right to waive certain rights. *Cf.* Art. 1.14; Art. 15.17. Therefore, we evaluate that conflict.

CAMPBELL's participation was rather limited, so it's not as if PERKINS was in any way *dis*allowed self-representation. But, neither was PERKINS's prior trial or appellate experience on these *very* issues inquired into or considered. And, where the prior alleged "convictions" were noted, the inclusion of any of that at sentencing was greatly unfair, for those matters are flat out not "final," as this appellate court may confirm via Judicial Notice.  In other words, regarding the appointment issue, no one knows, yet, but what PERKINS handled **both** trial **and** appeal, previously and currently, with deftness and aplomb.  Additionally, the procedural fact that absolutely confirms PERKINS's position is that this was never a "criminal" matter but was at all times a non-case; hence, "civil." Issue 9. There's

**No Notice.  No commercial nexus.**

no such thing as appointment of counsel for *civil* matters. [15]

A standard that looks to the "objective conditions as of the date of appointment" is what should govern this issue. Those "objective conditions" *include* not only the prior trials but also the ***exact same legal principles*** as for this one. In other words, the fact this is ***one more*** non-case, i.e., a facially "civil" matter, coupled with the fact that PERKINS has been, ***repeatedly***, the ***only*** legal mind in the courtroom who actually understands "transportation" has ***got*** to be factored into the equation at *some* point. In other words, given the "objective conditions as of the date of appointment," it's LIPSCOMBE, WASHBOURNE, CHU, and maybe even CAMPBELL, who needed legal counsel from *PERKINS*. They had the right to reject that counsel, which they did, and yet PERKINS wasn't allowed the same consideration.

Bottom line, PERKINS just doesn't see how LIPSCOMBE gets a "pass" even *this* time. ***However***, either way on that, *something* in the way of an objective standard ***must*** be established so that we don't have this issue *in perpetuity*.

---

[15] This is not a Family Code matter, whether termination or juvenile.

**No Notice.  No commercial nexus.**

**Issue 11:    May STATE ever charge *any* alleged Transp. Code violation as a misdemeanor?**

Record references. None.  New challenge to subject matter jurisdiction.

Subject matter jurisdiction can't be "agreed to."

It's ancient that the parties cannot, by agreement or consent, confer jurisdiction on any trial court.  "Criminal" context. STATE must file (and serve) its original pleading to establish jurisdiction. *Dunbar*, 297 S.W.3d at 780 (*Indictment* may be waived; ***Information*** may not); *Murray*, 302 S.W.3d at 877 n.11 (same). *Heilman*, 413 S.W.3d at 508 (citing TEX. CODE CRIM. PROC. ANN. art. 12.02; *Garcia*, 596 S.W.2d at 527; *Ieppert*, 908 S.W.2d at 220 (People may not "consent to be imprisoned for conduct which does not constitute a crime.")); *Casias*, 503 S.W.2d at 265 (for appellate jurisdiction, the existence of a sentence is jurisdictional).  "Civil" context. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d at 224-25; *Dubai Petroleum Co.*, 12 S.W.3d at 74-77 (Part II) (citing *Fed. Underwriters Exch.*, 141 Tex. at 541, 174 S.W.2d at 600).

What is the proper offense level?

*All* matters sounding in "criminal" charges codified *outside* the Penal Code sound in alleged breach of fiduciary duty.  That's the only form of agreement for which mere breach may even *possibly* be enforced "criminally." Therefore, any

_____

and all "crimes" arising from the Transp. Code sound in alleged breach of trust.

In *Chacon*, we learn that a *municipality* may not decrease (i.e., alter) the punishment level, via ordinance (i.e., "agreement"), where STATE has established such level via the Penal Code.

To be sure, we're not talking about an ordinance, here, as in *Chacon*, but we *are* talking about a punishment-level conflict between the Penal Code and the Transp. Code. So, what is the punishment level, if any, for criminal breach of trust? State jail felony. TEX. PENAL CODE § 32.43 (commercial bribery, by label), but "criminal" breach of fiduciary duty from the Transp. Code is only a Class B (or C).

Where the Dept. of Public Safety or the Dept. of Transp. is the entity making the offer for a reduced punishment, which has to be the situation, given that the "offer" is in the Transp. Code, there's no way either entity gets around (c).

> (b) A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary.

> (c) A person commits an offense if he offers, confers, or agrees to confer any benefit the acceptance of which is an offense under Subsection (b).

TEX. PENAL CODE § 32.43(b), (c).

By extending the offer of a reduced punishment, it's the alleged ***beneficiary*** (whether DPS or TX DoT) that potentially violates § 32.43(c), and that by merely

**No Notice.  No commercial nexus.**

extending the offer of a reduced punishment level. Where the alleged **beneficiary**

consents, then there may or may not be a violation of § 32.43(b) or (c), but that

depends on whether parties may by agreement alter the legislativley established

punishment level.  Is it "legal" for parties (even if one of them is a STATE agency)

to "agree" to a lesser punishment level?  PERKINS doubts very seriously that such

is even conscionable. *Cf. Chacon*. Since it's definitely not possible to side-step

(reduce, alter) the punishment level via a commercial nexus based on an

*ordinance*, why should a commercial nexus looking to a STATE "code" be treated

any differently? Is it the agreement or the party that matters? If it's the party,

STATE still has to prove up a fiduciary agreement, including the real party in

interest, i.e., the active beneficiary, in order to side-step this problem.  STATE also

has to prove that the Respondent formally and intentionally consented to being a

fiduciary (per the Transp. Code).

There is no such evidence, here, so we're still talking "civil" non-case, but

that doesn't alter in any way the *basis* of the alleged violation of the Transp. Code

– alleged "criminal" breach of trust.

In sum, until a STATE agency *is* authorized to offer a reduced punishment

level via a commercial nexus looking to a STATE "code" (that offers that lesser

punishment level), it violates public policy to allow parties to reduce (alter) the

statutory punishment level by agreement between themselves.  *Chacon* (no

**No Notice.  No commercial nexus.**

alteration via agreement disguised as an ordinance); thus, by logical extension, no

alteration by *any* "code" that applies, if at all, only by agreement. In sum, all

alleged Transp. Code "violations" are state jail felonies.

<u>What is the proper charging instrument?</u>

Procedurally, that means **Grand Jury Indictment**. (Jurisdictionally, that

means *District* Courts, *not* county courts.)

<u>No waiver of Indictment.</u>

Where the proper charging instrument for any Transp. Code matter is an

Indictment, it's very material that there's no such waiver in this Record.

Since there is no Indictment (or any Citation or Return thereof, *see* TEX. RS. CIV.

P. 99-107), there is no case, as a matter of law.

<u>No evidence – Capacity.</u>

**Issue 12:    Did STATE ever prove PERKINS liable in the capacity charged?**

Record references. None.  New challenge to subject matter jurisdiction.

*See*, generally, preceding Issue.

To make the point about the nature of any alleged Transp. Code violation,

STATE proved up no commercial nexus, much less one sounding in trust.

PERKINS was never engaged in "transportation," Issue 1, therefore, he never

**No Notice.  No commercial nexus.**

volunteered into the essential fiduciary role. And no one may be compelled into a

fiduciary role/office. BOGERT § 42 at 434, § 44 at 452 and n.16 (coerced trust is

not evidence).

Since there is no evidence of any relevant commercial nexus, Issue 1, there

is also no evidence that PERKINS was ever liable in the capacity charged.


Appearance Bond.

**Issue 13:    Did LIPSCOMBE actually add conditions to PERKINS's
            Appearance Bond?**

Record references. *See* Statement of Facts, "Appearance Bond," p.4, "Bond-

jacking and [']ultimate issues['] as "conditions," p.5, and "Bond-jacking – No

charging instrument; no evidence; no standing," p.7.

LIPSCOMBE asserts that PERKINS may be held in contempt.

2.Supp.Tr.14(17) to .15(21). Contempt requires disobedience of the court, which

requires an order.

> Civil contempt in Texas is the process by which a court exerts its
> judicial authority to compel obedience to some order of the court. *Ex parte
> Werblud*, 536 S.W.2d 542 (Tex.1976). One who is committed to jail for civil
> contempt should be able to find somewhere in the record the written order,
> which meets the requirements of *Ex parte Slavin*, 412 S.W.2d 43
> (Tex.1967). It is the written order which is entered on the minutes, which a
> court is directed to sign, Tex.R.Civ.P. 306a, and which evidences one's
> rights and duties. Oral orders are poor substitutes for the requirement of one
> final judgment.

---

*Ex parte Padron*, 565 S.W.2d at 924. "There was a total failure to prove that he was ordered to do anything ...." *Id*.

The (obvious) purpose of the exhaustive list is to confirm that PERKINS finds nothing of Record, not even a mention, much less an ***order***, about any such "no driving" conditions associated with his Appearance Bond. *Cf*. 2.Supp.Tr.7(13-15), .17 (10-16). "Telling" and "ordering" (of Record) are two different things.

As for STATE's motion to revoke/modify, clearly, STATE can request that relief without there being any such added conditions, and STATE makes no reference to any such added conditions. It's just that both LIPSCOMBE and CHU assert that such conditions were added, and PERKINS doesn't find that, at all.

There being no order with any added conditions, whatsoever, contempt is off the table. That affects the relevant procedures. *In re Fountain*, 433 S.W.3d 1, 10, 12-13 (Tex. App. – Houston [1st Dist.] 2012, no writ) (dissent KEYES, J.). Key, where there are no such Bond conditions, the entirety of the proceeding is suspect, for a generic assertion of "criminal" conduct regarding a generic Bond violation has a process that starts with **a charging instrument**. *See* Issue 11.

---

**No Notice.  No commercial nexus.**

**Issue 14:** Did LIPSCOMBE err (or abuse discretion) by adding *any* conditions to PERKINS's Appearance Bond?

Record references. Same as Issue 13.

Where nothing was added, e.g., preceding Issue, *this* Issue is moot.

If there really is something added, then, on the one hand, Bond is flexible enough that certain conditions may very well be added, where assuring **"appearance"** is the objective. *Ex parte Anderer*.

So, as a place to start, PERKINS expects that adding conditions is generically possible, *if* they're of a particular nature, i.e., a nature that motivates appearance, rather than a nature that, on the other hand, purports to allow a court to strip relevant "charging" processes of all remote semblance of Due Process.


**Issue 15:** Did LIPSCOMBE err (or abuse discretion) by adding "ultimate issue" conditions to PERKINS's Appearance Bond?

Record references. Same as Issue 13.

If Issue 14 is moot, then 15 (this one) may be, also.

WASHBOURNE had the audacity to argue that "driving" would put PERKINS at risk of non-appearance!  R.117 (V.). Where's the connection? Reality suggests that *not* being able to use one's car is the greater risk to non-appearance.

Moreover, this is an "ultimate issue" matter. *See* discussion starting p.5. Where Bond, whether pre-trial or post-conviction, is conditioned on a matter that is

_____

**No Notice.  No commercial nexus.**

at the heart of the reason for trial in the first place, that "breach" issue is handled by short-circuited procedure, as the Supp.Tr Volumes prove in abundance.

In sum, there's nothing about a "no driving" condition for Bond, if such existed, that has anything to do with insuring appearance. *Ex parte Anderer*. In fact, it's obviously the exact opposite! PERKINS appeared, having "not driven," and STATE dragged him away from trial in handcuffs. In short, STATE ***and*** LIPSCOMBE has no purpose or intent other than PUNISHMENT, as another way to perpetuate the political vendetta.

Even more to the point, how is *that* condition "evaluated" shy of a criminal charge, anyway? So, where there's a criminal charge, R.116-17 (IV.), 2.Supp.Tr.6(22-25), then, given the generic concept of not getting into more trouble is a condition of pre-trial release, it follows that a specific, "ultimate issue" condition is "repetitive and redundant," anyway, and is, literally, nothing more than an attempt to short-circuit the proof and process regarding such an alleged "criminal" violation, as this Record, via the three Supp.Tr Volumes self-proves in train-car loads.

**No Notice.  No commercial nexus.**

<u>No evidence – Bond-jacking.</u>

**Issue 16:   Did LIPSCOMBE err (or abuse discretion) by compelling PERKINS to post more Bond?**

Record references. Same as Issue 13, including R.116-18, 145, 146, 147, 2.Supp.Tr (all) (and 3.Supp.Tr (all)).

Even if any conditions on Bond *were* lawfully added, and PERKINS finds none, Issue 13, did PERKINS **ever** breach them? *See* Issues 1 to 6, and "No evidence standard," p.30. There has never been any evidence of "transportation;" Issue 1; hence, there's never been any evidence of "driving." Issues 1-6, in particular Issue 4.

No matter how many times LIPSCOMBE (or STATE) labels and treats "traveling" as "transportation," in particular "driving," Issue 4, nothing about his/their grave error in perspective changes "travel" into "transportation." *Cf. Lozman.*

<u>Compelled responsive/defensive pleading.</u>

**Issue 17:   Did LIPSCOMBE err (or abuse discretion) by entering a responsive plea of *any* nature for PERKINS?**

Record references. *See* same heading in Statement of Facts, p.8.

Consent cannot be compelled, period. *Rudzewicz* (jurisdiction doesn't flow from fraud, undue influence, or overwhelming bargaining power); FED. R. CIV. P. 8(c); TEX. R. CIV. P. 94; *Ballard* (local rules don't justify (criminal) Due Process

**No Notice.  No commercial nexus.**

violations); § 636(a), (c) ("by consent only"); *Gonzalez* ("If the parties consent") (construing § 636(**b**)).

Compelled consent is the exact *antithesis* of the very soul of "this state." The coercive environment vitiates the very "evidence" it purports to create. *Ohralik* (addressing coercion specifically engaged by the legal profession); *Bates* (addressing coercion specifically engaged by the legal profession); *Escobedo* (coerced confession is not evidence); *Miranda* (same); 1 PAGE §§ 5.7, 15.11 (coerced will is not evidence); BOGERT § 42 at 434, § 44 at 452 and n.16 (coerced trust is not evidence); *Pollock I,* 157 U.S. at 553-54 (1st ¶ of opinion) (non-consent by even one beneficiary prevents amendment to trust agreement); *Arnold* (vacated per *Booker*) ("evidence" (and never-before-heard-of **charges**) not presented at trial and not agreed to at sentencing is (are) inadmissible for sentencing).

So, no respondent may *ever* be compelled to consent to Notice that has never happened. In other words, no respondent may *ever* be compelled to "respond" into a vacuum. To compel a response is to suggest that there's something to which *to* respond. If STATE or LIPSCOMBE wants a responsive plea, the only way any *conscious* respondent is going to do anything but enter a Special Appearance and/or Plea to the Jurisdiction is by first receiving (timely) STATE's original pleading. Then and only then is a responsive plea even *procedurally* competent.

Substantively, judicially compelled responsive pleading can't happen until

**No Notice.  No commercial nexus.**

***all*** jurisdictional issues are fully vetted, on appeal if necessary. [16] There truly is no

need or value in joining issue on the merits via responsive plea where the court has

absolutely no subject matter jurisdiction to *reach* the merits.


**No Personal Jurisdiction**

    <u>Statutory Challenge – Art. 25.04.</u>

**Issue 18:**    **Does Art. 25.04 facially violate Due Process?**

    R.19, 51-54, 202, 223-26.

    ***Art. 25.04.***

> In misdemeanors, it shall not be necessary before trial to furnish the accused
> with a copy of the indictment or information; but he or his counsel may
> demand a copy, which shall be given as early as possible.

Art. 25.04.

    PERKINS also challenges that line of cases from at least 1993, *see, e.g.,*

*Aguilar*, if not older, that support Art. 25.04.

    Notice to a trial court is in no conceivable way Notice to the respondent.

Due Process isn't fulfilled until STATE informs the *<u>"target"</u>* that STATE has

---

[16] The appellate process that ***refuses*** pre-trial to address subject matter
jurisdiction challenges (especially "new" challenges raised by those who are doing
*everything under the sun* to mitigate STATE's, the prosecutors', the complainant's,
and the judge's damages), leaves STATE, the prosecutors, the complainants, and
the judge(s) twisting in the wind.

**No Notice.  No commercial nexus.**

actually filed a claim. *See, e.g., Murphy Bros.* (original pleading is filed *then*

served); [17] *O'Grady* (notice is required, even in the "criminal" context); *Lloyd*, 5

U.S. at 366 ("A citation not served is as no citation.").

How does a defendant obtain a copy of STATE's original pleading so as to

be *able* to read it?  Either the defendant waives Notice and does STATE's work for

STATE, finding the information on his own, or else the defendant compels STATE

to satisfy **its duty** under Due Process to **serve** at a meaningful time, in a meaningful

manner, on the defendant a copy of what STATE has filed.

> An elementary and fundamental requirement of due process in any
> proceeding which is to be accorded finality is notice reasonably calculated,
> under the circumstances, to apprise interested parties of the pendency of the
> action and afford them the opportunity to present their objections.

*Mullane*, 339 U.S. at 314.  A failure of Notice violates "the most rudimentary

demands of due process of law." *Armstrong*, 380 U.S. at 550 (Notice, meaningful

time, meaningful manner. 380 U.S. at 552).

*See also Milliken* (Notice, opportunity to be heard, fair play, substantial

justice); *Internat'l Shoe* (Notice, opportunity to be heard); *Sniadach* (Notice,

opportunity to be heard); *Fuentes v. Shevin* (Notice, meaningful time); *N. Ga.*

*Finishing* (Notice, opportunity to be heard, even for corporations (i.e., the

shareholders)); *Burns* (Notice, opportunity to be heard, on upward departure);

---

[17] *Murphy Bros.* is a civil case, but all cases are non-cases, i.e., civil, until the
plaintiff, here "State," proves standing and Notice.

**No Notice.  No commercial nexus.**

*Hamdi* (denial of access and of opportunity to be heard); *Jones* (Notice, opportunity to be heard).

Burden-relieving.

**Issue 19:     Did LIPSCOMBE relieve STATE of its procedural burden?**

Record references.  *See* "Burden-relieving" in Statement of Facts, p.10. *See also* Issues 8 and 18.

Yes. And in train-car loads. This Record contains no Return of Process/Service.

What's wrong with this picture? – *Witness* Subpoena's have "Return of Service" written into the form, R.108-15, 168-75, but STATE's original pleading need not be served on the respondent.

Indelibly scarred into the mind is the reality not only that LIPSCOMBE drafted CAMPBELL to be a process server but also that CAMPBELL *accepted* the role. **3.Tr**.11(17-18); **4.Tr**.71(6-24).

That raises a few questions. First, may CAMPBELL be so conscripted? The answer is, "Of course not!" CAMPBELL, "a participant in the proceeding," is disqualified.   Art. 24.01(b)(2). *See also* Tex. R. Civ. P. 103.

Secondly, was CAMPBELL's consent effective?  No.  It isn't in writing. Art. 24.01(c).

**No Notice.  No commercial nexus.**

Thirdly, did CAMPBELL actually *serve* anything? No. The Record shows that CAMPBELL pointed out to PERKINS that STATE's original pleadings were in the Record and surmised that PERKINS read them. There's no evidence, coupled with no cross-examination. Also, there's nothing in the Record indicating that CAMPBELL delivered any paperwork to PERKINS.

*See also* TEX. RS. CIV. P. 15, 16, 17, 21a, 21b, 99-107, 103, in particular.

By not compelling STATE to serve its original pleading, LIPSCOMBE relieved STATE of its Due Process burden to *serve* Notice. *See* Issue 18. Burden-relieving, a concept normally associated with the merits but here associated with Notice/Service, violates Due Process. *See* Issue 8.

## Panel-related matters

**Issue 20:    Did LIPSCOMBE err (or abuse discretion) by sending the matter to the panel at all?**

Record references. *See* Statement of Facts, "Submission of anything to the advisory panel," p.10.

*See* Issues 1 to 19.

At issue is the province of the court versus that of the panel. Jurisdictional issues are questions of law. The panel has no more authority to *presume* jurisdiction than a court and no authority *at all* to determine jurisdiction where the

---

**No Notice.  No commercial nexus.**

jurisdictional facts are wholly uncontested.

"Personal jurisdiction is a question of law for the court, even if it requires resolving questions of fact." *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 790-91. "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d at 226.

> [W]hether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *See* [*Gates*, 291 S.W. at 949]; [*Gentry*, 21 S.W. at 570] ("Certainly the court has the right to hear the necessary evidence to enable it to decide as to whether or not it has power to try the case it is sought to have it adjudicate, whether the allegations disclosing such want of jurisdiction appear in the petition of the plaintiff, or in the plea to the jurisdiction by the defendant."))]; *see also* [*Valentin*, 254 F.3d at 363 n.3] (observing that in certain situations, the predicate facts can be so inextricably linked to the merits of the controversy that the district court may "defer resolution of the jurisdictional issue until the time of trial"); [*Cameron*, 131 F.3d at 1170] ("Whether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."); [*Williamson*, 645 F.2d at 413 n.6, 416 n.10] (suggesting that a federal district court's role in determining jurisdictional facts may be more limited in cases in which the jurisdictional attack implicates the merits of plaintiff's cause of action). In this case, we address a plea to the jurisdiction in which undisputed evidence implicates both the subject matter jurisdiction of the court and the merits of the case.

*Id*.

> [I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland*, 34 S.W.3d at 555 [(confining the evidentiary review to evidence

**No Notice.  No commercial nexus.**

that is relevant to the jurisdictional issue)]. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id*. at 554. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. The United States Supreme Court and all of the federal circuits have authorized federal district courts to consider evidence in deciding motions to dismiss for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1); [*Land*, 330 U.S. at 735], *overruled by implication on other grounds by* [*Larson*, 337 U.S. 682] (observing that as a general rule, district courts have authority to inquire "into the facts as they exist" "by affidavits or otherwise" as well as the pleadings when determining whether the court has subject matter jurisdiction). [n.6, discussing federal standards, omitted].  If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d at 227-28.

LIPSCOMBE and STATE opposed PERKINS's jurisdictional challenge and facts with politically-motivated *ad hominem* and facially errant "legal" positions, not evidence. There is no dispute that STATE *never* served PERKINS with STATE's original pleading. *See, e.g.*, **3.Tr**.10(13) to .11(20); **4.Tr**.71(6-24), .72(17-20). Issues 8 and 19.  There is no dispute that PERKINS was at no time (1) removing anyone or anything (2) from one place to another (3) for hire (4) in "this state."  There simply is "no evidence" of "transportation," including no evidence of

any passenger manifest, bill of lading, or hire. Whole Record; 4.Tr.39(20) to .41(7), .49(7) to .51(4).

Where an advisory panel can't ignore clear, positive, direct, non-contradicted facts, *Prairie View A&M Univ.*, 180 S.W.3d at 710-11 (citing *Keller*, 168 S.W.3d at 820), then neither can a court.

There being no "transportation," LIPSCOMBE had no subject matter jurisdiction. There being no service of STATE's original pleading(s), LIPSCOMBE had no personal jurisdiction. There being no jurisdiction, facially, as a matter of law, there simply was no triable matter, here, ever. *Cf. Wesbrook*, 29 S.W.3d at 111-112 (homicide context); *Hicks*, 299 S.W.3d at 258 ("Courts have consistently held that in the event there is an unambiguous contract and there is no dispute as to the facts that may constitute a breach, it is error to submit the case to the jury."). Here, there is no commercial nexus, at all, and that conclusion is a matter of law arising from the undisputed facts recited in this Issue.

LIPSCOMBE should have held a jurisdictional facts hearing, and where STATE perpetuated its addiction to "no evidence of 'transportation,'" he should have *granted* the Spec. Appearance and/or Plea/Juris. If he felt the need to jack with PERKINS, running up the bill, by waiting until trial to have STATE confess "no evidence," then he should have granted one or the other of PERKINS's trial-time motions to dismiss. He denied everything, refusing to recognize that he never

had authority to do anything but dismiss.

Fair trial – Unfairly biasing the panel.

**Issue 21:** **Did LIPSCOMBE unfairly bias the panel with his errant legal argument about what "transportation" means?**

Record references. *See* "Fair trial – Unfairly biasing the panel," in the Statement of Fact, p.11. Key are 4.Tr.6(6-14), .50(12) to .51(3), and .56(19) to .57(6). The formal objections to "instructions" occurred during the jury charge phase. During trial, which is the timing of the "instructions," "corrections," and discussions at issue in these three Issues, no direct objection was asserted. Since LIPSCOMBE is simply "dead wrong" about the law, the objection is self-preserving by means of PERKINS's having asserted the correct standard.

*See* Issues 1 to 8.

"If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *La.-Pac. Corp.*, 976 S.W.2d at 676.

"An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P.*, 284 S.W.3d at 855-56.

*See also* TEX. RS. APP. P. 44.1(a) (appellate courts), 61.1 (Supreme Court).

---

**No Notice.  No commercial nexus.**

"Charge error is generally considered harmful if it relates to a contested, critical issue." *Columbia Rio Grande Healthcare*, 284 S.W.3d at 856.

Key here is that the *issues* are contested, starting with jurisdiction; the *law* is contested; the *definitions* are contested; thus STATE's factless *legal conclusions* masquerading as "facts" are contested. The *facts* are not contested. Procedurally, STATE nowhere contested PERKINS's evidence that STATE never **served** PERKINS. Issues 18, 19. STATE's position, effectively asserted via LIPSCOMBE, is that STATE doesn't **have** to *serve* PERKINS with its original pleading(s). Substantively, STATE nowhere proved up "transportation." Issues 1, 8. There is no passenger manifest, no bill of lading, and no hire. STATE's position, effectively asserted via LIPSCOMBE, is that STATE doesn't **have** to *prove* "transportation" for **any** matter allegedly arising from the Transp. Code.

How can *any* instruction from LIPSCOMBE regarding "transportation" "assist" the panel when it's "dead wrong" about the law and based on no relevant facts whatsoever?

---

**No Notice.  No commercial nexus.**

**Issue 22:** **Did LIPSCOMBE unfairly bias the jury with this opening remarks about transportation licensure mixed with insurance?**

Record references. *See* "Fair trial – Unfairly biasing the panel," in the Statement of Fact, p.11. Key is 3.Tr.16(10) to .17(8).

*See* Issues 1 to 8, 20 and 21.

As regards "driving," what LIPSCOMBE **says** is *almost* completely correct. "Driving" is privileged, commercial activity. That's correct. "Driving" is not a "right." That's correct. "Drivers" need "licenses." That's correct. "Drivers" need "insurance." That's correct.

LIPSCOMBE's problem is that he refuses to recognize that he's bought into the scam not the reality. "Driving" is not generic activity, i.e., "traveling." "Driving" is specifically that **commercial** activity where the one behind the wheel gets paid (in "funny money") to take someone or something from one place to another. PERKINS has never "driven," and he's certainly not done any "driving" at any time relevant to the matter at bar.

While a "driver" agrees to get and maintain insurance, that insurance requirement has absolutely, positively nothing under the sun to do with the "license." "Licensure" has nothing to do with "be[ing] responsible in case they have a boo boo.'" 3.Tr.16(10) to .17(8). "Licensure," universally (throughout "this state") has to do with one thing and only one thing: getting paid in "funny money."

---

**No Notice.  No commercial nexus.**

If it's a regulated industry in "this state," then getting paid with "funny money," the recognized "currency" in/of "this state," happens legally only where the recipient has that "license." That is the sole reason to have a "license," for any industry that "requires" a "license," namely getting paid with "funny money." That's it. That's the sole reason.

"*Insurance*" has to do with the boo boos, and only when one engages in that line of commerce called "transportation" has one agreed to get/maintain insurance.

For the standard for what constitutes a competent instruction, *see* Issue 21. Since it's of no assistance to a panel to hear the judge totally corrupt the legal standards, and that in the face of no evidence even justifying submitting the matter to the panel, at all, Issue 20, it follows that the "instruction" unlawfully biased the panel against PERKINS.

**Issue 23:** **Did LIPSCOMBE unfairly bias the panel with his errant legal argument during PERKINS's case-in-chief?**

Record references. *See* "Fair trial – Unfairly biasing the panel," in the Statement of Fact, p.11. Key is 49(2) to .51(3).

*See* Issues 1 to 8, and 20 to 22.

LIPSCOMBE was 100% wrong about the applicable legal standards in this matter from Day One. His lying to the panel about the law constitutes an unfair act

**No Notice. No commercial nexus.**

of biasing them against PERKINS.

This trial was about as fair as any Star Chamber could be. The matter was over before it started. LIPSCOMBE presumed commercial intent, thus effectively presumed guilt, and it showed from Day One.

Since it's of no assistance to a panel to hear the judge totally corrupt the legal standards, and that in the face of no evidence even justifying submitting the matter to the panel, at all, Issue 20, it follows that the "instruction," "correction," upbraiding during PERKINS's case-in-chief unlawfully biased the panel against PERKINS.

<u>Jury instructions.</u>

**Issue 24:** **Did LIPSCOMBE err (or abuse discretion) by failing to define "transportation" for the panel?**

Record References. *See* "Jury Instructions" in Statement of Facts, p.11.

*See* Issues 1 to 8, 20, and 21.

How in blue blazes can ***anyone*** on the face of this planet possibly even remotely begin to evaluate the evidence in a "transportation" matter without having any idea, at all, what "transportation" is/means???

The scam is so well marketed that even that excused panelist thought PERKINS was crazy. 4.Tr.123(6-11). The reality is that PERKINS was the only

_____

**No Notice. No commercial nexus.**

one in that proceeding *not* drinking from the poisoned well. And, the only way anyone is ever in a million years going to understand that is for the term "transportation" formally and officially to be defined per PERKINS's four-element version or per the Supreme Court's "three"-element version. *Lozman* (Part IV – "carrying passengers or cargo"). That fourth element, "in 'this state,'" is actually supplied; it's just hidden by the fact that *Lozman* is a water-based maritime matter.

The Whole of this Record proves the point that "transportation" *must* be overtly defined in order that anyone, other than PERKINS, have a clue as to what's at issue. LIPSCOMBE's failure to define "transportation," especially after the *law-defying* harangue he dished out, left a very false impression in the minds of the panelists. That false impression didn't assist them; it's flat out the wrong law; and there were absolutely no facts supporting any "instruction" he offered in refutation of PERKINS's position. Issue 21.

**Issue 25:** **Did LIPSCOMBE err (or abuse discretion) by failing to define "drive," "operate," and "vehicle" for the panel?**

Record references. *See* "Jury Instructions" in Statement of Facts, p.11.

*See* Issues 1 to 8, 20, 21, and 24.

In general, this system is so semantically driven and so counter-intuitive to the popular brainwashing that without very specific, even repeated, guidance on

---

**No Notice. No commercial nexus.**

the semantics, there's no way PERKINS could obtain a fair trial. The "guilty without evidence" verdict proves that the panel was left totally without guidance.

LIPSCOMBE's failure to define "drive," "operate," *and* "vehicle," especially after the **law-defying** harangue he dished out, left a very false impression of the legal standard in the minds of the panelists. That false impression didn't assist them; it's flat out the wrong law; and there were absolutely no facts supporting any "instruction" he offered in refutation of PERKINS's position. Issue 21.

**Issue 26:** **Did LIPSCOMBE err (or abuse discretion) by failing to explain the algebraic connection between "transportation" and the key commercial, semantic terms of legal conclusion?**

Record references. *See* "Jury Instructions" in Statement of Facts, p.11.

*See* Issues 24 and 25.

Definitions, alone, are not enough to complete the necessary and necessarily wicked paradigm shift imposed upon the panel members. Defining the terms *and then* working through the statutory algebra at each step, in a manner very similar to the way PERKINS has presented the terms from the outset, is the only way the panelists are going to come to understand what's at issue.

To hit the highlights, "transportation," a term of legal conclusion, has four elements: (1) removing people and/or property (2) from one place to another (3)

**No Notice.  No commercial nexus.**

for hire (4) in "this state." Issue 1. "Vehicle," a term of legal conclusion, depends on "transportation." Without evidence of "transportation" use, there is no "vehicle." Issue 2.  "Motor vehicle," a term of legal conclusion, depends on "transportation." Without evidence of "transportation" use, there is no "vehicle;" hence, no "vehicle" with a motor. Issue 3. "Drive," a term of legal conclusion, depends on "transportation."  Without evidence of "transportation" use, there is no "vehicle;" hence, no "motor vehicle;" hence, no being behind the wheel of a "motor vehicle." Issue 4. "Operate," a term of legal conclusion, depends on "transportation."  Without evidence of "transportation" use, there is no "vehicle;" hence, no "motor vehicle;" hence, no being behind the wheel of either a "vehicle" or a "motor vehicle." Issue 5.

Thus, where there is no hire, there is no "transportation;" hence, no "vehicle," no "motor vehicle," no "driving," *and* no "operating."

There is no evidence of hire in this entire Record. Issue 1.

A pre-trial evidentiary hearing on jurisdictional facts would have ended this with a minimum of systemic exposure. But, now, PERKINS stands robbed (use of force – color of law) of ten thousand "dollars," and "charged and convicted" of ("My God you guys. My God!", habitual) DWI, 4.Tr.106(6) to .107(9), .111(9) to .114(8), .117(1) to .119(6), and for doing what?  Asserting his right not to contract and his right not to engage in any particular line of commerce. Thus, the time is

_____

**No Notice.  No commercial nexus.**

clearly upon us to end STATE's habitual drunkenness and tyrannical lawlessness.

**Issue 27:     Did LIPSCOMBE err (or abuse discretion) by failing to include any of PERKINS's proposed Instructions?**

Record references. *See* Issues 24 to 26.  **4.Tr**.64(5) to .75(5); **6.Tr**.77-115.

*See* Issues 1 to 8. Until the semantics are defined and connected for the panelists, i.e., until this scam is exposed for exactly what it is, the marketed misunderstanding supplants the applicable legal concepts and principles. That exposure benefits not only the panelists but also the complainants, the enforcement officers (if different from the complainants), the prosecutors, *and* the judges.

PERKINS's Proposed Instructions would have assisted (greatly) the panelists, because it's the law of "this state," and the Proposed Instructions had a full Record of facts and evidence justifying their inclusion/assertion. Issue 21. A court that recognizes the law, thus PERKINS's Proposed Instructions, is a court that would have granted the Spec. Appear., obviating the need for Instructions. Issue 20.

---

**No Notice.  No commercial nexus.**

**Trial/Evidence**

**Issue 28:    Did LIPSCOMBE err (or abuse discretion) by admitting STATE's Ex. 1?**

R.86-107; **3.Tr**.7.11 to .9(6), .13(14-20); **4.Tr**.35(6) to .36(25); **6.Tr**.5-7.

*See also* "STATE's Ex. 1," in the Statement of Facts, p.12.

*See* Issues 1 to 8, 18, and 19.

STATE offered no evidence of "transportation" and never served PERKINS; hence, LIPSCOMBE never had jurisdiction, meaning there should not have been any trial, at all.  The existence of trial doesn't render STATE's Ex. 1 relevant any more than "self-authentication," alone, renders it relevant.

Since PERKINS wasn't "driving" at any time relevant to this matter, there's no relevance in any assertion of a "driving record."  To admit a "driving record" is to suggest to the panel that there's "driving" going on, where there's no evidence of any such commercial activity.  The document contains no probative value for this trial whatsoever, and it's admission was facially and extremely prejudicial.

---

**Issue 29:** **Did LIPSCOMBE err (or abuse discretion) by overruling PERKINS's objections to the commercial semantics?**

Record reference. *See* "The commercial semantics" in Statement of Facts, p.13.

*See* Issues 1 to 8, 17, and 24 to 27.

To overrule those objections is to compel consent. Issue 17. "Transportation"-matter "trials" aren't reviews of historical fact. They're "negotiations." Thus, to overrule an objection to the semantics isn't to address evidence; it's to compel consent to terms of legal conclusion for which there's no foundational facts and, of course, no consent. It's to fail to realize what is truly at issue in the commercial-nexus dependent, non-Penal-Code matters. Jurisdiction cannot be founded in fraud (or undue influence, duress, etc.). *Rudzewicz*.

---

Appellant's Principal Brief (PERKINS) 72
**No Notice.  No commercial nexus.**

**Void Judgment**

No evidence – conviction.

**Issue 30:**    **Did LIPSCOMBE err (or abuse discretion) by accepting the advisory panel's recommendation on guilt?**

Record references. *See* "No evidence – conviction," p.13. *See also* "No evidence standard," p.30.

*See* Issues 1 to 8, 12, 16, 17, and 19.

STATE never proved "transportation." Issue 1. That ended the matter.

Lack of subject matter jurisdiction renders a judgment void, rather than merely voidable, so that it may be challenged either directly or collaterally. *See and compare*, [*Browning*, 698 S.W.2d 362] (on collateral attack judgment was not shown to have been rendered by a court without jurisdiction). Subject matter jurisdiction is essential to the authority of a court to decide a case; it is never presumed and cannot be waived. [*Tex. Ass'n of Business*, 852 S.W.2d 440]. When a trial court lacks subject matter jurisdiction, it has no discretion and must dismiss the case as a ministerial act. [*Qwest Microwave, Inc.*, 756 S.W.2d 426].

*Miller*, 872 S.W.2d at 346.

*See also Bland Indep. Sch. Dist.*, 34 S.W.3d at 553-54; *Mapco, Inc.*, 795 S.W.2d at 703.

**No Notice.  No commercial nexus.**

**Issue 31:** **Did LIPSCOMBE err (or abuse discretion) by adding "ultimate issue" conditions on probation?**

Record references. Statement of Facts, "ultimate issue" headings, pp.5, 15.

*See* Issues 1 to 8, 12, 15, and 17.

Sentencing is illegal, generally, because there is no evidence of guilt. Issues 1 to 8. There is not even any evidence of jurisdiction. Issues 1 to 7, 12, 16, 19, 30.

Bond-jacking was based on a charge of "driving." Probation is conditioned on "no driving." PERKINS has yet *to* "drive," for there's neither passenger(s) nor cargo, and there's no "hire" involved at any time. Issues 1, 4.

All the "no driving" "condition" exists to do is justify more *punishment* without any remote semblance of Due Process, i.e., no charging instrument, improper evidentiary standard and burden placement, no advisory panel, no opportunity to appeal. *See* n.7.

Moreover, no one may be compelled into a fiduciary role or compelled into commerce. Issues 12, 17. No matter how many times someone is tried for "no license" or "no insurance," s/he may never in a million years be *compelled* either to get a license or to get insurance. Those are simply illegal (Bond/) Probation conditions, because they compel commerce and violate the right not to contract. *Lozman*. *See also NFIB* (PP[C]ACA ("Obama Care") is "voluntary" not only for

---

individuals but also for STATES); *Griswold* (married, thus impliedly marriage-"licensed," woman cannot be compelled to make babies for STATE) (ban on contraceptives had to go).

## Request for Relief

PERKINS requests relief as follows:

Rule on each of the Issues presented;

DEFINE "transportation;"

VACATE the trial court's judgment;

STRIKE Art. 25.04;

REMAND with instructions to dismiss;

Award any and all other relief identified above and otherwise to which PERKINS shows himself justly entitled.

Respectfully submitted,

/s/ Wes Perkins
WESLEY PERKINS
11900 Metric Blvd, # J179
Austin, Texas 78758

**No Notice.  No commercial nexus.**

## Certificate of Service

By my signature below, I certify that on or about the __3d__ day of February, 2015, I served a true and correct copy of this Brief and Appendix by email, where possible, and otherwise by hand delivery, certified mail, 3-day or faster delivery, or first class mail on the following:

DAVID ESCAMILLA
Travis County Attorney
P.O. Box 1748
Austin, TX  78767
(STATE)

LISA C. MCMINN
State Prosecuting Attorney's Office
P.O. Box 13046
Austin, TX  78711

/s/ Wes Perkins
WESLEY PERKINS

## Certificate of Compliance

By my signature below, I certify that the font for the body and the footnotes is at least 14-point, Times New Roman, and that the word count of this Brief, per section and total, including headings and footnotes, is as follows: 14,951.

/s/ Wes Perkins
WESLEY PERKINS

**No Notice.  No commercial nexus.**

## Appendix Contents

**Mandatory**

Final Order (3 pgs)                                    R.195-97

**Optional**

Jury verdict                                              R.189

Charge                                                R.184-88

OFFENSE DATE: 1-15-13
IN THE COUNTY COURT
AT LAW NO. 3 OF
TRAVIS COUNTY, TEXAS
DEGREE: B

THE STATE OF TEXAS

§
§
§
§
§

VS.

Wesley Eugene Perkins

## ORDER GRANTING MISDEMEANOR COMMUNITY SUPERVISION TRIAL (JURY)
## ANY PLEA PUNISHMENT (COURT)

This day this cause was called for trial, and the State appeared by the County Attorney, and the Defendant having been duly arraigned, appeared and both parties announced ready for trial; thereupon, a jury of good and lawful persons, was duly selected impaneled and sworn, according to law; the information *Driving While License Suspended* was read, and the Defendant after being admonished of the consequences thereof by the Court pleaded Not Guilty to the accusation therein contained. Thereupon, the jury having heard the evidence submitted, and having been duly charged by the Court, and having heard the argument of counsel, retired to consider their verdict, and afterward returned into open court the following verdict.

The jury found the Defendant guilty as charged in the information *Driving While License Suspended*.

And it appearing to the Court that the Defendant and the State have agreed to waive a jury and to submit the assessment of said Defendant's punishment to the Court; and the Court having consented to the waiver of a jury herein, and after having heard all the evidence submitted and argument of counsel the Court is of the opinion and so finds that the said Defendant's punishment should be by a fine of $2000.00 _____ and by confinement in the Travis County Correctional Center for 45 Days _____.

It appearing to the Court, however, that before this trial Defendant made application in writing and under oath to the Court for community supervision herein; and it further appearing to the Court that the Defendant satisfies the requirements of the Misdemeanor Community Supervision Law of Texas and that the ends of justice and the best interests of the public, as well as of the Defendant, will be served by suspending imposition of sentence and placing the Defendant on Community Supervision.

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that Defendant be, and is hereby placed on Community Supervision in this cause for a period of *Two (2) Years* from this date, on the following terms and conditions, to-wit: That the defendant pay all costs herein incurred and $~~2000~~ Ø of said fine and 45 days of said confinement be probated and that during the term of such supervision the defendant shall:

(1) Commit no offense against the laws of this or any State or of the United States.
(2) Avoid injurious or vicious habits.
(3) Avoid the use of all narcotics, habit forming drugs, alcoholic beverages, and controlled substances.
(4) Avoid persons or places of disreputable or harmful character.
(5) Report to the supervision officer as directed by the judge or the supervision officer and obey all orders of the Court and the rules and regulations of the Community Supervision and Corrections Department.
(6) Refrain from disorderly conduct, abusive language, or disturbing the peace while present at the office of the Department.
(7) Permit the Supervision Officer to visit you at your home or elsewhere.
(8) Work faithfully at suitable employment as far as possible.
(9) Do not change residence without permission and report changes of employment to supervision officer as directed.
(10) Remain within _____ (Travis County [or another county] or State of Texas) unless given permission to depart by the Supervision Officer.
(11) While on community supervision, you must have on your person at all times a current, valid Texas Department of Public Safety photo identification card or a valid Texas Department of Public Safety photo driver's license. You must obtain this photo identification within thirty (30) days of the date of your community supervision.
(12) Support your dependents.
(13) Submit a urine or breath specimen at the direction of the Supervision Officer and pay all costs if required.
(14) Pay to and through the Centralized Collections of the Travis County Tax Office, in one lump sum or in installments, as set forth in the collection schedule, the following:

  a. Court Costs     $ TBD _____
  b. Fine            $ ~~Ø~~ 2,000.00 _____
  c. Attorney Fees   $ _____

Pay to and through the Community Supervision and Corrections Department of Travis County, Texas, in one lump sum or in installments, as set forth in the collection schedule, the following:

  d. Supervision fee of $60.00 per month
  e. Restitution   $ _____ to _____
  f. _____

NAME: Wesley Eugene Perkins        CAUSE NO: C1CR13 200 882

## ADDITIONAL CONDITIONS OF COMMUNITY SUPERVISION

(17)    Participate in, and comply with the rules of the following program(s):

        a.    _____Electronic Monitoring _____

        b.    _____SCRAM for _____

        c.    _____Ignition Interlock and follow Ignition Interlock Additional Conditions of Community Supervision

        d.    _____Other _____

(18)    Complete __80__ hours of Community Service Restitution at a place approved and designated by the Community Supervision and Corrections Department.

(19)    Report to, cooperate with, and participate in all programs (until successfully discharged), and pay all costs for the following classes and services:

**Assessments**:

        a.   _____ CSCD Diagnostic

        b.   _____ CSCD TAIP

        c.   _____ Family Violence at CES

        d.   _____ ATCIC

        e.   _____ Drug and Alcohol at CES

**Classes**:

        f.   _____Anger Management Program

        g.   _____BIPP

        h.   _____Certified Drug Education Class (15 hours) for driver's license reinstatement.

        i.   _____Drunk Driving Panel

        j.   _____DWI Offender Certified Education Class (12 hrs) and submit proof to DPS within 181st day after this date to prevent driver's license suspension or the refusal of DPS to issue you a license as provided by law.

        k.   _____DWI Offender Certified Intervention Program (30 hrs) and submit proof to DPS for driver's license reinstatement.

        l.   _____Other as determined by the Supervising Officer

        m.  _____ _____ _____ _____ _____ _____

(20)    Report to the supervision office for an evaluation for the following programs or services and follow the recommendations and pay costs incurred while in the program:

        a.   _____CSCD Counseling Center

        b.   __X__ Counseling/Treatment designated by the Supervision Officer

        c.   _____In-Patient Treatment Program at _____ or comparable treatment program recommended by TAIP and complete aftercare as recommended by the Treatment Provider.

        d.   _____Out-Patient Treatment Program at _____ or comparable treatment program recommended by TAIP and complete aftercare as recommended by the Treatment Provider.

        e.   _____Relapse Prevention Program

        f.   _____SMART Residential and Continuing Care

        g.  _____ _____

(21)    Assigned to the following specialized unit until the level of supervision is changed by the court and/or Supervision Officer and follow the department guidelines for the caseload:

        a.   _____Mental Health Unit: participate in assessment for services through ATCIC or designated treatment provider and follow recommendations; do not participate in clinical drug studies; sign all necessary releases and take all medications as prescribed.

        b.   _____Sex Offender Unit and follow Sex Offender Additional Conditions of Community Supervision

        c.   _____Other Specialized Caseload

(22)    Register with and remain registered with the Travis County Domestic Relations Office, if ordered by the Court and/or your Community Supervision Officer.

196

03-11

1916

NAME: _Wesley Eugene Pe.._s_    CAUSE NO: _CICR13Z00882_

## ADDITIONAL CONDITIONS OF COMMUNITY SUPERVISION

**X** (23) Serve _30_ days in the Travis County Jail, beginning _N/A_; straight time/work release/ weekends/ credit for back time/SWAP Program. (Suspended per Judge)

____ (24) Do not open or maintain a checking account until approved, in writing, by the Court and/or your Supervision Officer.

____ (25) Have no contact with _____, either in writing, in person, by phone, electronically or through third parties and stay 200 yards from where they live work or any place they may be.

____ (26) Show proof of a high school diploma within ninety (90) days or obtain GED within ____ year(s).

____ (27) Have no contact with gangs or gang members during term of community supervision.

____ (28) Report by mail if deported

**X** (29) Obtain a valid driver's license with insurance within 30 days

**X** (30) Do not drive without valid insurance on any family owned vehicle/ "Personal conveyance"

You are hereby advised that under the law of this State, the Court shall determine the terms and conditions of your community supervision, and may at any time during the period of community supervision, alter or modify the conditions of your community supervision. The Court also has the authority at any time during the period of your community supervision to revoke your community supervision for violation of any of the conditions set out above.

_8-26-14_
Date of Sentence

_____
Judge Presiding

_____
Community Supervision Officer

### Defendant's Receipt

Receipt is hereby acknowledged on the date of entry thereof, of one copy of the above order.

_____
Defendant's Signature

Right Thumb

____ The Court makes a finding of family violence which occurred against _____

06/13

CAUSE NO. 13-200882

STATE OF TEXAS

VS.

WESLEY EUGENE PERKINS

IN THE COUNTY COURT

AT LAW NO. 3

TRAVIS COUNTY, TEXAS

## VERDICT OF THE JURY

We, the jury, find the Defendant, Wesley Eugene Perkins, **not guilty** of the offense of driving while license invalid without financial responsibility.

Date _____

Time _____

**Presiding Juror** _____

## VERDICT OF THE JURY

We, the jury, find beyond a reasonable doubt that the Defendant, Wesley Eugene Perkins, is **guilty** of the offense of driving while license invalid without financial responsbility.

Date *August 21, 2014*

Time *1:58 p.m.*

ANGELA BRACKEN
**Presiding Juror**

189

CAUSE NO. 13-200882

| STATE OF TEXAS | IN THE COUNTY COURT |
|---|---|
| VS. | AT LAW NO. 3 |
| WESLEY EUGENE PERKINS | TRAVIS COUNTY, TEXAS |

## CHARGE OF THE COURT

**MEMBERS OF THE JURY:**

The Defendant, Wesley Eugene Perkins, stands charged by information with the offense of driving while license invalid without financial responsibility, alleged to have been committed in Travis County, Texas, on or about the 15th day of January, 2013. To this charge the Defendant has pleaded not guilty. You are instructed that the law applicable to this case is as follows:

I.

You are charged that our statutes provide that a person who drives or operates a motor vehicle upon a public road after that person was issued a valid Class C license to drive a motor vehicle upon a public highway in the State of Texas and while the person's license was legally suspended under Texas Transportation Code 708.152(a) and while operating a motor vehicle in violation of Texas Transportation Code 601.191, that person is guilty of Driving While License Invalid without Financial Responsibility.

II.

"Public road" means any road to which the public or a substantial group of the public has access and includes, but is not limited to, roads, streets, and highways.

The term "motor vehicle" means every vehicle which is self-propelled.

By the term "highway" herein is meant the entire width between property lines of any road, street, way, thoroughfare, or bridge in this State not privately owned or controlled when any part thereof is open to the public for vehicular traffic.

"Financial responsibility" means a motor vehicle liability insurance policy that complies with the State's minimum required standards of liability coverage, a surety bond filed with the Department of Public Safety, a deposit of $55,000 cash or securities with the Comptroller, a deposit of at least $55,000 cash or cashier's check with the County Judge, or a self-insurance certificate issued by the Department of Public Safety for a person who has more than 25 motor vehicles.

### III.

You are further charged that a Class C Texas Driver's License is a valid Class C license to drive a motor vehicle upon a public highway in the State of Texas.

Texas Transportation Code 708.152(a) states that a license is suspended if the person fails to pay the amount of a surcharge on the person's license or fails to enter into an installment payment agreement with the Department of Public Safety or its agent for said surcharge

Texas Transportation Code 601.191 states that a person must have financial responsibility if that person operates a motor vehicle.

### IV.

Now, if you believe from the evidence beyond a reasonable doubt that the Defendant, Wesley Eugene Perkins, on or about the 15th day of January, 2013, did then and there drive and

operate a motor vehicle upon a public road in Travis County, Texas, after the Defendant was issued a valid Class C license to drive a motor vehicle upon a public highway in the State of Texas, and while the Defendant's license was legally suspended under Tex. Trans. Code 708.152(a), and further, at the time of the offense, the Defendant was operating the motor vehicle in violation of Tex. Trans. Code 601.191, then you will find the Defendant guilty of the offense charged and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict "Not Guilty."

## V.

In all criminal cases the burden of proof is on the State. All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined and charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution proves guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

In the event you have a reasonable doubt as to the defendant's guilt after considering all

the evidence before you, and these instructions, you will acquit the defendant and say by your verdict "Not Guilty."

## VI.

You are charged that it is only from the witness stand that the jury is permitted to receive evidence regarding the case, or any witness therein, and no juror is permitted to communicate to any other juror anything he may have heard regarding the case or any witness therein, from any source other than the witness stand.

## VII.

In deliberating on the cause you are not to refer to or discuss any matter or issue not in evidence before you; nor talk about this case to anyone not of your jury; and after the reading of this charge you shall not separate from each other until you have reached a verdict.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given to the testimony, but you are bound to receive the law from the Court which is herein given you, and be governed thereby.

After argument of counsel, you will retire and select one of your members as your presiding juror. It is his or her duty to preside at your deliberations and to vote with you in arriving at a verdict. Your verdict must be unanimous, and after you have arrived at your verdict, you may use one of the forms attached hereto by having your presiding juror sign his or her name to the particular form that conforms to your verdict. Your sole duty at this time is to determine whether the defendant is guilty or not guilty under the information in this cause, and restrict your deliberations solely to that question.

JOHN LIPSCOMBE, JUDGE

DATE 8-21-14

FILED
2014 AUG 26 PM 2:16
TRAVIS COUNTY